UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 05-11283-NG

| | |
|---|---|
| TERESA A. MCCOY | ) |
|     Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| PRUDENTIAL INSURANCE COMPANY | ) |
| OF AMERICA | ) |
| STATE STREET CORPORATION | ) |
|     Defendant | ) |

**MEMORANDUM OF PLAINTIFF TERESA MCCOY IN SUPPORT OF
MOTION THAT THE DENIAL OF BENEFITS CLAIM
BY PRUDENTIAL INSURANCE COMPANY OF AMERICA
IS SUBJECT TO THE "DE NOVO" STANDARD OF REVIEW**

INTRODUCTION

In accordance with the Scheduling Order of this Court adopted on April 3, 2006, the plaintiff moves to have this Court establish the standard on review as *de novo* regarding Prudential Insurance Company of America's denial of long term disability benefits. With regard to the short term disability benefits, the plaintiff seeks the application of contract law rather than ERISA[1].

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case an abuse of discretion standard is applied.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L.Ed.2d 80, 109 S. Ct. 948 (1989).  As the party advocating a deferential standard of review, Prudential bears the burden of

---

[1]Plaintiff will file a separate motion seeking review under Massachusetts contract law on the short term disability plan as that plan is a "pay roll" practice that is exempt from ERISA under 29 CRF §2510.3-(1)(b).

demonstrating that its adverse disability determination is entitled to such deference. <u>Kinstler v. First</u>

<u>Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 251-52 (2d Cir.1999); <u>Kearney v. Standard Ins. Co.</u>,

175 F.3d 1084, 1089-90 (9th Cir.1999).

      The are four (4) meritorious reasons to grant this motion: (1) Prudential has stipulated in

other litigation, involving its same nationwide ERISA long term disability insurance counsel that

the operative plan documents fail to grant to Prudential "discretion" in its plan administration; (2

) The plan documents on which Prudential relies, fall woefully short of language that is required to

grant discretion to an insurer. This has been found by many District Courts and Circuit Courts too;

(3) Prudential's plan document arguably contain language that grants discretion at TM 00036[2], but

the page that preceded it, TM 00035 states that page 36 is not applicable -   THIS ERISA

STATEMENT IS NOT PART OF THE GROUP INSURANCE CERTIFICATE and (4) State Street

Corporation did not grant discretion to Prudential in accordance with 29 U.S.C. § 1105( c).

<u>SUMMARY OF FACTS</u>

1.     Teresa McCoy's was employed by State Street Corporation for more than ten years.

2.     As an employee of State Street Bank Corporation ("State Street"), Teresa McCoy was

     provided with short term disability benefits as part of a pay roll practice plan by State

     Street[3], and long term disability benefits coverage through an employee welfare benefit

     plan identified as the "State Street Bank and Trust Company Long Term Disability

---

[2]References to documents having the initials, TM, followed by six digits, i.e. 00001, refer to documents produced by counsel to Prudential Insurance Company of America as part of the automatic discovery.  There is filed separately herewith a verifying declaration of Jonathan M. Feigenbaum.

[3]<u>See</u> 29 CFR § 2510.3 - (1)(b).

Coverage." ("LTD Plan"). This is set forth in the pertinent pages from the LTD Plan as EXHIBIT A.

3.    The terms of the LTD Plan were set forth in the Certificate of Coverage, and the pages necessary for the purposes of this motion are attached herewith as EXHIBIT A, TM 00001, 00004, 00006-7, 00013, 00026, 00035-41.

4.    Page TM 00036 contains language that Prudential is sure to argue contains discretion. This will not assist Prudential, because the preceding page TM 00035 specifically states that pages TM00035-00041 are not part of the Group Insurance Certificate - THIS ERISA STATEMENT IS NOT PART OF THE GROUP INSURANCE CERTIFICATE.

5.    Prudential Insurance Company of America ("Prudential") has stipulated through its nationwide ERISA long term disability litigation counsel in other ERISA long term disability litigation, known and stylized as Sullivan v. Prudential Insurance Company of America et al, C.A. No., 05-4005-AHM (RXC), Central District of California as follows:

Your Honor, there is a recent decision identified in the joint statement by Mr. Dean in the Seventh Circuit in which that decision overturned the decision to grant discretion to Prudential. **We are not, will not and I'll be happy to be quoted ever contend that the phrase "when Prudential determines" confers discretionary authority.** EXHIBIT B, page 8, line 24 to page 9 line 10.

# I.    PLAINTIFF'S CLAIM SHOULD BE REVIEWED UNDER A *DE NOVO* STANDARD OF REVIEW.

A.    The Plan Does Not Give Prudential "Discretion" In Its Plan Administration.

The Supreme Court in Firestone Tire & Rubber Co., v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989), held that if the plan documents give the administrator explicit discretion to determine eligibility for benefits, then a deferential standard of review applies. Thus, *the de novo* standard is the rule and the arbitrary and capricious standard the exception. The First Circuit, "[ has] steadfastly applied *Firestone* to mandate *de novo* review of benefits determinations unless 'a benefits plan ... clearly grant[s] discretionary authority to the administrator,' " Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir.1998) (quoting Rodriguez-Abreu v. Chase Manhattan Bank, N.A, 986 F.2d 580, 583 (1st Cir.1993)). The burden of proof is on the party requesting utilization of the arbitrary and capricious standard to show its application. If the LTD Plan documents do not give discretion, then the review by the Court must be *de novo*. Thus, not only must their be a valid grant of discretion, but the delegation of the grant must be properly made in accordance with the terms of the plan, and it must be exercised by a fiduciary.

"Despite the holding of *Firestone Tire,* plan sponsors have been unaccountably loath to amend their plans to make the delegation of discretionary authority unambiguously explicit. The result is a plenitude of litigation contesting the standard of review to be applied in individual cases, with claimants advancing inventive, if at times impervious, arguments for applying the more friendly *de novo* standard." Giannone v. MetLife, 311 F.Supp.2d 168, 174 (D. Mass. 2004)[4]. Here, Prudential cannot meet its burden, and thus the review must be *de novo*.

---

[4]The nonprofit Families USA advocates expansion of the NAIC's Model to Prohibit Discretionary Clauses to disability insurance contracts.... "The discretionary clauses create an

B.    <u>Prudential Stipulated Nationwide that "When Prudential Determines" Is Not
        Sufficient to Confer Discretion</u>

To the extent that Prudential contends that the following language confers discretion,

Prudential's stipulation in <u>Sullivan v. Prudential Insurance Company of America, et al.</u>, 05-4005 -

AHM (RXC) should bar it. Prudential is likely to point to EXHIBIT A, Page TM 00013 and argue

that the following provisions grant discretion to Prudential:

> **How Does Prudential Define Disability?**
> **You are disabled when Prudential determines that:**
> • **you are unable to perform the material and substantial duties of your
>   regular occupation due to your sickness or injury;**
> • **you have a 20% or more or less loss in your indexed monthly earnings
>   due to that sickness or injury.** EXHIBIT A, TM 00013

> We may request that you send proof of continuing disability, satisfactory to
> Prudential, indicating that you are under the regular care of a doctor. This proof,
> provided at your expense, must be received within 30 days of a request by us
> EXHIBIT A, TM 00013

This argument must be rejected, because Prudential has represented to another Court that

Prudential would never again argue that the "Prudential determines" language vests discretion in

Prudential. Its nationwide ERISA long term disability litigation counsel stipulated that the

language in bold did not confer discretion. Counsel did this to avoid another Circuit decision

---

uneven playing field for consumers who want to file legal challenges against an insurer's
decision, according to Sonya Schwartz, an attorney and health policy analyst for Families USA.
These clauses give legal deference to the insurer's decision unless the claimant can prove that the
insurer's decision was unreasonable or irrational (the "arbitrary and capricious" standard), which
is a "very difficult standard to meet," Ms. Schwartz noted. Claimants are much less successful in
cases where the arbitrary and capricious standard was applied (only 28% were successful) than
they were in cases involving "de novo" review (68% were successful). According to Ms.
Schwartz, "Prohibiting discretionary clauses in disability insurance contracts insures that courts
will apply the same standard of review as they do in other contract cases so that consumers will
get a fair, impartial review of their claim."
http://www.benico.com/News/News%20Updates/6-21-04.htm

against it.

Your Honor, there is a recent decision identified in the joint statement by Mr. Dean in the Seventh Circuit in which that decision overturned the decision to grant discretion to Prudential. **We are not, will not and I'll be happy to be quoted ever contend that the phrase "when Prudential determines" confers discretionary authority.** EXHIBIT B, page 8, line 24 to page 9 line 10

That stipulation was made in reference to Diaz v. Prudential Ins. Co. of America, 424 F.3d 635 (7th Cir. 2005) where the Seventh Circuit found the Prudential "determines" language insufficient to grant discretion. The stipulation in the California case should be binding here in Massachusetts.

C.    Even Ignoring the Stipulation The Language Is Insufficient to Confer Discretion.

In Diaz v. Prudential Ins. Co;., of America, 424 F.3d 635 (7th Cir. 2005), the Seventh Circuit considered plan language virtually identical to that found in Ms. McCoy's claim. The Seventh Circuit referred to its prior decision in Herzberger v. Standard Insurance, 205 F.3d 327 (7th Cir. 2000)[5] where it concluded the language did not adequately confer discretion. On June 13, 2006, in another opinion running against Prudential, the Seventh Circuit again stated that the language did not confer discretion

At the risk of being flippant, we might ask what part of "no" doesn't Prudential understand? We acknowledge, though, that perhaps a fairer question, given our cases on this point, [FN1] is what part of "probably not" doesn't it understand. We take this opportunity to reaffirm that the language in this plan is not sufficient to confer discretion on Prudential.

Schwartz v. Prudential Ins. Co. of America, --- F.3d ----, 2006 WL 1598134 (7th Cir., June 13,

---

[5]The Herzberger decision has been widely cited and followed. See Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 108-109 (2nd Cir. 2005)(When "Prudential determines" is insufficient to confer discretion).

2006) at *2. In <u>Schwartz</u> the Court reviewed the history of the language analyzed in both  <u>Diaz</u> and <u>Herzberger</u>.

In <u>Herzberger v. Standard Insurance</u>, 205 F.3d 327 (7th Cir. 2000), the Seventh Circuit considered plan language in two cases consolidated for appeal. The lead case, <u>Herzberger</u>, examined language in a Standard Insurance Company policy. The companion case, <u>Johnson v. Prudential Company of America</u>, 205 F.3d 327 (7th Cir. 2000), involved a claim for long term disability  benefits under a Prudential policy containing the same operative language as the LTD Plan involving Ms. McCoy's claim. The Seventh Circuit held

> We hold that *the mere fact that a plan requires a determination of eligibility or entitlement by the administrator*, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof), does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary.

<u>Id</u>. at 332 (emphasis added).  The Seventh Circuit went so far as to provide model language which would provide discretion. "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them. "  <u>Herzberger</u> at 205 F.3d at 331. Why Prudential did not amend its LTD Plan's remains a mystery, and having failed to do so, had adverse results in <u>Diaz</u> and <u>Schwartz</u>.  Thus, under <u>Herzberger</u> line of case, the language in the LTD Plan effecting Ms. McCoy is insufficient to grant discretion to Prudential.

The First Circuit embraced the guidance of Justice Posner of the Seventh Circuit:

> Chief Judge Posner proposed model "safe harbor" language for inclusion in ERISA plans that could leave no doubt about the administrator's discretion:  " 'Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.' "  We wholly endorse this proposal.  We recognize, however, that "courts have consistently held that there are no 'magic words' determining the scope of judicial review of decisions to deny benefits," <u>Id</u>.,

and until wording such as that suggested by Judge Posner becomes standard, we must in fairness carefully consider existing language that falls short of that ideal.

Brigham v. SunLife of Canada, 317 F.3d 72, 81 (1st Cir. 2003).

Under the unique application of the law to the facts argued in Brigham[6], the Court found that language in the Sun Life Insurance policy, ("If proof is required, we must be provided with such evidence *satisfactory to us* as we may reasonably require under the circumstances ) was sufficient under the circumstances to confer discretion to the insurer. Id. at 81. In Brigham, the Court reviewed policy interpretations of various Circuit Courts regarding language that used the word *satisfactory* and the difference when the phrase is used *satisfactory to us.* Id at 81. Based on the tenor of the Court's decision, and its ringing endorsement of Judge Posner's "safe harbor" language, it appears doubtful that any LTD Plan in future decisions that uses language such as "proof to us" or "proof satisfactory to us" will be sufficient to confer discretion to an insurer. For this reason, Brigham does not assist Prudential[7].

Within this Circuit, Herzberger has been followed. In   McDonald v.  the Timberland Company Group Long Term Disability Coverage Program and The Prudential Insurance

---

[6] The First Circuit rejected the appellant's challenge to the standard of review because the appellant failed to argue it in the District Court and only raised it for the first time on appeal. Throughout the proceedings in district court, Brigham assumed that the arbitrary and capricious standard applied, never arguing, as he does now, that the policy language was insufficiently explicit to trigger discretionary review. Indeed, on more than one occasion, appellant's counsel expressly identified the issue in the case as whether Sun Life's decision was arbitrary and capricious. In light of the precedent described above, we do not feel compelled to depart from the well worn principle that " 'arguments not seasonably raised in the district court cannot be raised for the first time on appeal,... Id. at 82.

[7] The Sixth Circuit still holds "when Prudential determines" will confer discretion. Noland v. Prudential Ins. Co. of America, 2006 WL 1526087 (6th Cir. June 2, 2006) (Unpublished).

Company of America, 2002 WL 122382, at *2 (D.N.H.), the Court found that the following

language did not confer discretion to Prudential:

> Total Disability exists when Prudential determines that all [the] conditions are met."
> Record at 0157. Additionally, the [Plan] states that Prudential may ask for written proof of
> disability, the proof must be satisfactory and that Prudential has the right to request
> medical examinations. Record at 0174-0175.

So did other District Courts in Puerto Rico, Massachusetts and New Hampshire.

Marquez v. Squib Mfg., Inc., 344 F. Supp2d. 315, 322 (D.P.R. 2004); Rivera v. Cornell

University, 297 F. Supp2d 412, 414 (D.P.R. 2004).; DiGregorio v. Pricewaterhouse Coopers

Long Term Disability Plan, 2004 WL 1774566 (D. Mass. August 9, 2004); Urso v. Prudential Ins.

Co. of America, 2004 WL 335265 (D. N.H. November 23, 2004) at *3. This Court is urged to

follow the leads of those Courts that have examined the issue post Herzberger and post Brigham.

As the late Judge Wisdom observed, sitting by designation with the Ninth Circuit:

> We do not want to encourage an employer to insulate himself from effective
> appellate review through the abuse of vague phrases that fail to make clear to the
> employees that the employer will have the final determination of benefit decisions.
> Employees who lose promised benefits should not lose the additional benefit of
> judicial review because their employer reserved discretionary power to itself
> without making that reservation clear.

Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir. 1992). For the reasons set out above, this

Court should review the claim *de novo*.

For those reasons, this Court should review Prudential's decision *de novo*.

D.    Prudential Overtly Disclaimed Discretion.

The LTD Plan contains a page titled ERISA Statement. EXHIBIT A, TM 00036. The first page contains language that arguably grants discretion to Prudential

> The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to detemine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious. TM 00036.

That language might lead one to believe that discretion has been granted to Prudential. It does not. The preceding page states in large print - This ERISA Statement is not part of the Group Insurance Certificate. EXHIBIT A, TM 00035[8]. Any person reading page TM 0035 would reasonably conclude that the language on EXHIBIT A, TM 00036 is not applicable.  Thus, to the extent that Prudential granted to itself discretion on page 36,

---

[8] The ERISA Statement cannot be a Summary Plan Description because it does not comply with the law.  To constitute an Summary Plan Document, it must be "sufficiently accurate and comprehensive to reasonably appraise participants and beneficiaries of their rights and obligations under the plan" and must contain specific information, including:
* the name and type of the plan;
* the name and address of the agent for service of process;
* the name and address of the plan administrator;
* the plan's eligibility requirements;
* circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;
* the source of the plan's financing;
* the plan year; and
* claims procedures and remedies available for redress of denied claims.
An SPD must also have information required by the DOL regulations:
* the name and address of the employer whose employees are covered by the plan
* the employer identification number assigned by the internal Revenue Service to the plan sponsor and the plan number assigned by the plan sponsor;
* the type of administration of the plan, e.g. control administration, insurer administration, etc.
* the phone number of the plan administrator;
* a statement that service of legal process may be made upon a plan trustee or the administrator
* the name, title and address of the principal place of business of each trustee of the plan;
* a description or summary of the benefits;
* the date of the end of the year for purposes of maintaining the plan's fiscal records;
29 CFR §§ 2520.102-2

Prudential took it away by its disclaimer on page 35.  Again this is a substantial ground why this Court should review the decision of Prudential *de novo*.

      D.      <u>There Was No Delegation of Discretionary Authority By State Street to Prudential</u>.

ERISA requires that in order for an effective delegation of discretionary authority to be made so that the deferential standard of review will apply, the statutory Plan Administrator must properly designate a delegate for that fiduciary's discretionary authority. <u>Rodriguez-Abreu v. Chase Manhattan Bank</u>, 986 F.2d 580, 584 (1st Cir. 1993). Prudential may attempt to argue that there was a proper delegation by State Street of its discretionary authority.  This must be done pursuant to a written plan instrument. *See*, 29 U.S.C. § 1105©).  However, in this case, it appears that Prudential granted discretion to itself without authority to do so.  Because ERISA does not permit this self delegation, the review must be *de novo*.

Although the language itself found at page TM 00036 arguably provides for discretion, the manner by which that language found its way into the Plan does not comply with 29 U.S.C. § 1105( c). In this instance, it appears that Prudential self delegated discretionary authority to itself.


Discretionary decision making authority does not arise as a matter of right. It must be properly set forth in an ERISA plan instrument, in order for a Plan Administrator to exercise it. A Plan Administrator may delegate that authority if it follows the procedure set forth in the plan instrument and under ERISA.  This is explicitly set forth at  29 U.S.C. § 1105( c), and has been carefully followed in the First Circuit for more than a decade. <u>Rodriguez-Abreu</u>, 986 F.2d at 584.

In this case, the State Street needed to delegate that authority to Prudential. Here it did not. The Plan Sponsor is the Plan Administrator, State Street. The Plan does not name the Plan

Administrator and by default under 29 U.S.C. §1002(16), the Plan Sponsor, the employer, State

Street, is vested with the duties of the Plan Administrator.  The statute provides

> 29 U.S.C. 1102 (16)(A) The term ``administrator'' means--
> (I) the person specifically so designated by the terms of the
> instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not
> designated and a plan sponsor cannot be identified, such other
> person as the Secretary may by regulation prescribe.
> (B) The term ``plan sponsor'' means (I) the employer in the case of
> an employee benefit plan established or maintained by a single
> employer,

Without an appropriately adopted governing plan document, the Plan Administrator, State Street

could not delegate discretionary decision making authority to another party.  In other words, the

necessary element is a document that says "State Street vests Prudential with fiduciary

responsibility including making benefit decisions".

The analysis under 29 U.S.C. § 1105( c) and prior precedent requires finding each part of

this statute is me.   Specifically, Section 1105( c) entitled  "Allocation of fiduciary responsibility;

designated persons to carry out fiduciary responsibilities," states:

> (1) The instrument under which a plan is maintained may expressly provide for
> procedures (A) for allocating fiduciary responsibilities (other than trustee
> responsibilities) among named fiduciaries, **and** (B) for named fiduciaries to
> designate persons other than named fiduciaries to carry out fiduciary
> responsibilities (other than trustee responsibilities) under the plan. (Emphasis
> added.)

This statute is conjunctive and has been interpreted to allow a "named fiduciary" to

delegate its fiduciary responsibilities under ERISA to a third party, however it may do so only if:

(1) The written plan instrument expressly allows for the delegation, including explanation of the

specific procedures that must be complied with in completing the delegation; and (2) there is an

express delegation between the delegator and delgatee. See <u>Rodriguez-Abreu</u> at 584 (1st Cir. 1993). ("To be an effective delegation of discretionary authority so that the deferential standard of review will apply, the fiduciary must properly designate a delegate for the fiduciary's discretionary authority."). Without a written delegation by State Street to Prudential, Prudential could not have been vested with discretionary authority to make benefit decisions. As such, the review must be *de novo*.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court is urged to find that the decision of Prudential is subject to the *de novo* standard of review before this Court.

**TERESA A. MCCOY**
By Her Attorneys,

*/s/ Jonathan M. Feigenbaum*
_____
Jonathan M. Feigenbaum, Esq.
B.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. (NEF), and paper copies will be sent to those indicated as non-registered participants on this 22nd day of June 2006.

*/s/ Jonathan M. Feigenbaum*
_____
L:\LITG\Tmcc001\Motoin Standard Review\motion.standardofreview.final.wpd

-13-

EXHIBIT A

# State Street Bank and Trust Company

Long Term Disability Coverage

TM 00001



# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | January 1, 2001 |
| **Contract Holder:** | STATE STREET BANK AND TRUST COMPANY |
| **Group Contract Number:** | GW-23403 |
| **Covered Classes:** | All Full-time Employees. |
| **Minimum Hours Requirement:** | Employees must be working at least 29 hours per week. |
| **Elimination Period:** | 26 weeks. |
| | **Benefits begin the day after the Elimination Period is completed.** |
| **Monthly Benefit:** | Your monthly benefit depends on the Option for which you are enrolled. |
| | Option 1: 50% of your monthly earnings, but not more than $10,000.00. |
| | Option 2: 70% of your monthly earnings, but not more than $15,000.00. |
| | Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may be limited under this coverage. |

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 60 | To your normal retirement age*, but not less than 60 months |
| Age 60 but under age 65 | 54 months |
| Age 65 but under age 70 | 30 months |
| Age 70 but under age 75 | 18 months |
| Age 75 or older | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:**     The long term disability plan is provided to you on a contributory basis. You will be informed of the amount of your contribution when you enroll.

**The above items are only highlights of your coverage. For a full description please read this entire Group Insurance Certificate.**

83500
CBH-LTD-1001                                                                                   (23403-8)

**TM 00004**

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

THIS CERTIFICATE IS NOT A MEDICARE SUPPLEMENT CERTIFICATE. If you are eligible for Medicare, review the Guide to Health Insurance for People with Medicare available from the company.

Prudential's Address

The Prudential Insurance Company of America
290 West Mount Pleasant Avenue
Livingston, New Jersey 07039

TM 00006

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;

- to whom Prudential will make a payment; and

- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Insured* means any person covered under a coverage.

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the plan's program date.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage, provided you are in *active employment* on that date.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;

- the date you apply for insurance, if you apply within 31 days after your eligibility date; or

- the date Prudential approves your application, if *evidence of insurability* is required.

TM 00007

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 50% of your indexed monthly earnings within 12 months of your return to work. But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 70% of your indexed monthly earnings within 12 months of your return to work.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

TM 00013

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

1.  That you are under the *regular care* of a *doctor*.

2.  The appropriate documentation of your monthly earnings.

3.  The date your disability began.

4.  Appropriate documentation of the disabling disorder.

5.  The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

6.  The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

7.  The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

TM 00026

This ERISA Statement

is not part of the

Group Insurance Certificate.

TM 00035

# ERISA STATEMENT

**Plan Benefits Provided by**

The Prudential Insurance Company of America
Prudential Plaza
Newark, New Jersey 07102

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

**Claim Procedures**

1.  **Determination of Benefits**

    Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

    If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

    (a)  the specific reason(s) for the denial,

    (b)  references to the specific plan provisions on which the benefit determination was based,

    (c)  a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

    (d)  a description of the Prudential's appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following your appeals, and

    (e)  if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

TM 00036

2.    Appeals of Adverse Determination

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by the Prudential Appeals Review Unit. The claim decision will be made by a member of the Prudential Claims Management Team. The Prudential Appeals Review Unit and Claims Management Team members are made up of individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

The Prudential Appeals Review Unit shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that the Prudential Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a)    the specific reason(s) for the adverse determination,

(b)    references to the specific plan provisions on which the determination was based,

(c)    a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d)    a description of Prudential's review procedures and applicable time limits,

(e)    a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(f)    a statement describing any appeals procedures offered by the plan, and your right to bring a civil suit under ERISA.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the

TM 00037

date such claim is deemed denied. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Upon receipt of a second appeal, the Prudential Appeals Review Unit will again conduct a full review of the claim file and any additional information submitted. The claim decision will be made by a member of the Prudential Senior Claims Management Team. The Appeals Unit and Senior Claims Management Team member would not have been involved in the initial benefit determination or in the first appeal.

The Prudential Appeals Review Unit shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter as well as your right to appeal the decision to Prudential's Appeal Committee. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied upon appeal.

If the second appeal of your benefit claim is denied or if you do not receive a response to your second appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your authorized representative may make a third appeal of your denial in writing to the Prudential Appeals Committee within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your third appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Upon receipt of a third appeal, the claim will be directed to Prudential's Appeals Committee by a member of the Prudential Senior Claims Management Team. This Committee will be composed of three members of the Senior Claims Management Team who have not been involved in any previous appeals.

The Prudential Appeals Committee shall make a determination on your third claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to the third level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting

TM 00038

to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the third level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a third time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

## Rights and Protections

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information about Your Plan and Benefits

- Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The plan administrator may make a reasonable charge for the copies.

- Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the

ERISA Statement                                                        (23403-8)

36

plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

## Assistance with Your Questions

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

ERISA Statement                                             (23403-8)

TM 00040

TM 00041

## ADMINISTRATIVE SERVICES AGREEMENT NO. 23403

effective January 1, 1996

between

## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
## (The Prudential)

and

## STATE STREET BANK & TRUST COMPANY
## (Purchaser)

The Purchaser has the Plan of Benefits described in Exhibit A (herein called Plan) for the benefit of the classes of persons set forth in that Exhibit, and desires The Prudential to furnish the Services set forth in Exhibit B with respect to the Plan. The Prudential will perform these Services provided that the Purchaser makes payments for the Services as listed in Exhibit C. By their signatures below, The Prudential and the Purchaser agree that this Administrative Services Agreement which follows is approved and its terms are accepted. The provisions on the pages which follow as listed on the Table of Contents are part of this Agreement.

| Date: _____ , 19 ____ | -STATE STREET BANK AND TRUST COMPANY- |
| | (Purchaser) |
| Witness: _____ | By: _____ |
| | (Signature and Title) |
| Iselin, NJ | THE PRUDENTIAL INSURANCE COMPANY OF AMERICA |
| June 16, 1997 | By: _____ |
| | Assistant Secretary |
| Attest _____ | |

The authorized officers of The Prudential and the Purchaser have executed this Agreement in duplicate.

TM 00061

I.    GENERAL PROVISIONS

A.  **Fiduciary Duty:**  It is understood and agreed that the Purchaser retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder, and that The Prudential is empowered to act on behalf of the Purchaser in connection with the Plan only as expressly stated in this Agreement or as agreed to in writing by The Prudential and the Purchaser.  The Purchaser and The Prudential agree that, with respect to Section 503 of the Employee Retirement Income Security Act of 1974, The Prudential will be the "appropriate named fiduciary" of the Plan for purposes of denial and/or review of denied claims under the Plan.  In exercising its fiduciary responsibility, The Prudential will have discretionary authority to determine eligibility for benefits as described in item I.B. of Exhibit B; to determine the amount of benefits for each claim received; and to construe the terms of the Plan.  However, the Purchaser will have the sole and complete authority to determine eligibility of persons to participate in the Plan.  The Prudential will have no other fiduciary duties under the Plan.

B.  **Hold Harmless and Indemnification:**  Prudential agrees to hold harmless and indemnify the Purchaser from any Indemnifiable Losses arising out of any function of The Prudential under this Agreement, provided that it is determined that the liability therefor was the direct consequence of gross negligence, criminal conduct or fraud on the part of The Prudential.

Except as described in the preceding paragraph, the Purchaser agrees to hold harmless and indemnify The Prudential from any Indemnifiable Losses arising out of any function of The Prudential under this Agreement (including but not limited to any Indemnifiable Losses arising from a breach of confidentiality in connection with any information or data relating to this Agreement released by The Prudential to the Purchaser, or to a third party at the request of the Purchaser, or from any services performed under this Agreement).

The Purchaser further agrees to hold harmless and indemnify The Prudential from any claim overpayment for which attempted recovery has been unsuccessful, which The Prudential at its sole discretion has determined to abandon, and from any levy, assessment or tax arising from any benefit under the Plan or any service or transaction under this Agreement, but excluding any tax on earnings or capital gains.

As used in this Agreement, the term Indemnifiable Losses will include any claim, damage, lawsuit, settlement, judgment or penalty, including attorney's fees and other expenses in connection therewith.

C.  **Lawsuits:**  Either party to this Agreement which becomes aware of a lawsuit which might give rise to an indemnification under this Agreement will notify the other party promptly in writing of the details of such lawsuit, except that any delay or failure to so notify the party whose obligation it is to indemnify will only relieve that party of its obligations hereunder to the extent it is prejudiced by reason of such delay or failure.

Either party which has been named as defendant in such a lawsuit will retain the right to conduct its own defense.  However, the parties may mutually agree that one of the two parties will be responsible for the mutual defense of both parties.  In any event, the two parties will consult and cooperate with the objective of coordinating the overall defense of the case.

If this Agreement terminates, the hold harmless and indemnification provisions above will continue to apply to any loss or cause of action arising out of any function of The Prudential under this Agreement prior to its termination.

**TM 00063**

Agreement No. 23403
Effective Date: January 1, 1996

## EXHIBIT B
## OF ADMINISTRATIVE SERVICES AGREEMENT NO. 23403

between The Prudential and the Purchaser

**Administrative Services to be furnished by
The Prudential in connection with
the Plan of Benefits described
in Exhibit A of the Agreement**

## I.    CLAIM SERVICES

A.  Claim Consultation-While the Agreement is in effect, Prudential will assist the Purchaser in determining the validity of, or amount of benefits payable for, any claim for benefits under the Plan which is referred to Prudential by the Purchaser for such determination.

B.  Claim Control-Prudential will, at the Purchaser's direction, investigate the claim or have the claimant examined by a physician during pendency of claim.

C.  Claim Review-Periodically, Prudential will conduct surveys of claim payments made by the Purchaser.  The purpose of such surveys will be to verify the accuracy of payments, accuracy of proof of claim and eligibility of claimants for benefits.  Prudential will also examine the Purchaser's payment processing procedures to assist in preventing the misuse of the Purchaser's check.

## II.   OTHER SERVICES TO BE FURNISHED IN CONNECTION WITH THE PLAN

A.  Cost Analysis

1.  Upon request of the Purchaser and receipt of any required information, The Prudential will furnish to the Purchaser an estimate of the benefit cost of any proposed modification or extension of the Purchaser's Plan of Benefits described in Exhibit A.  In connection therewith, The Prudential will notify the Purchaser of any changes in the Schedule of Charges under the Agreement which would be required if the Plan under the Agreement were so modified or extended.

2.  Annually, The Prudential will furnish to the Purchaser an analysis of the experience of the Plan which will include:

a.  An estimate of incurred but unreported claims.

b.  Benefit costs for the immediately preceding term of the Agreement.

c.  Data required for compliance with governmental reporting requirements.

B.  **Materials to be Furnished:** Materials will be of the type normally prepared by The Prudential for the purpose intended unless special materials are requested by the Purchaser.

TM 00067

EXHIBIT B

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 2 of 19

1   UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA

3

4 HONORABLE ROSALYN M. CHAPMAN, MAGISTRATE JUDGE PRESIDING

5

6 NANETTE SULLIVAN  )
       )
7   PLAINTIFF, )
       ) CASE NO. CV 05-4005 AHM(RCX)
8  VS.   )
       )
9 PRUDENTIAL INSURANCE )
 COMPANY OF AMERICA, ET AL.)
10    )
   DEFENDANTS. )
11    )
 _____)
12

13

14   DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

15    LOS ANGELES, CALIFORNIA

16    NOVEMBER 30, 2005

17

18

19

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 3 of 19

20  COURT DEPUTY/RECORDER:      MARSHA EUGENE-DOMINGUE


21  TRANSCRIBED BY:        HUNTINGTON COURT REPORTERS
                & TRANSCRIPTION, INC.
22                1450 W. COLORADO BOULEVARD
                SUITE 100
23                PASADENA, CALIFORNIA 91105
                (626) 792-7250

24


25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.


        Huntington Court Reporters & Transcription
                        1




1  APPEARANCES:


2  ON BEHALF OF THE PLAINTIFF:


3      BY:  CORINNE CHANDLER


4


5  ON BEHALF OF THE DEFENDANTS:


6      BY:  LOUIS DORNY
            NICOLE E. LUCY
7


8


9


10


11


12

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG     Document 15-3     Filed 06/22/2006     Page 4 of 19

13

14

15

16

17

18

19

20

21

22

23

24

25

Huntington Court Reporters & Transcription

2

1   LOS ANGELES, CALIFORNIA, WEDNESDAY, NOVEMBER 30, 2005

2

3       THE COURT:  I'M HAVING SERIOUS PROBLEMS FILING

4  THIS MOTION.  I HAVE A TENTATIVE THAT'S NOT IN QUITE

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 5 of 19

5   GOOD ENOUGH SHAPE TO HAND OUT, BUT I'LL TELL YOU WHAT MY

6   TENTATIVE RULING IS AND WHY, AND THEN THE PARTIES CAN

7   ARGUE AFTER I DO THAT.

8        I'M DENYING THE REQUEST FOR A PROTECTIVE ORDER.

9   SPECIFICALLY, I THINK THAT THE THREE LIMITED AREAS THAT

10  PLAINTIFF WOULD LIKE TO DO DISCOVERY IN AND HAVE

11  PROPOUNDED DISCOVERY ARE, ONE, IRRELEVANT TO THE CLAIMS

12  AND DEFENSES IN THIS CASE; AND, TWO, WOULD NOT BE

13  TERRIBLY BURDENSOME AT ALL FOR THE DEFENDANTS TO PRODUCE

14  THE INFORMATION.

15        AS TO THE RELEVANCY -- OF THE THREE AREAS AS I

16  UNDERSTAND IT -- AND YOU SHOULD CORRECT ME IF I'M WRONG

17  IN MY UNDERSTANDING -- THE FIRST AREA GOES TO THE -- THE

18  LANGUAGE AS TO WHETHER THE PLAN AFFORDS THE

19  ADMINISTRATOR OF THE PLAN DISCRETION OR WHAT KIND OF

20  DISCRETION AND, IN PARTICULAR, AS TO WHETHER THE SUMMARY

21  PLAN DESCRIPTION IS PART OF THE PLAN OR NOT PART OF THE

22  PLAN IF THAT'S THE LANGUAGE THAT PRUDENTIAL IS RELYING

23  ON IN CLAIMING THAT IT HAS DISCRETION.  AND BASED ON THE

24  JOINT STIPULATION, I HAD THE IMPRESSION THAT THERE WAS A

25  LANGUAGE PRUDENTIAL WAS RELYING ON.

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 6 of 19
Huntington Court Reporters & Transcription

3

1       AND IN REGARD TO THAT, THE SECOND AREA OF

2   DISCOVERY, WHICH GOES TO WHETHER THE CALIFORNIA

3   DEPARTMENT OF INSURANCE REVIEWED AND APPROVED THE

4   ARISTA, LANGUAGE GOES IN PARTICULAR TO SUMMARY PLAN

5   DESCRIPTION AND WHETHER THEY REVIEWED AND APPROVED THAT

6   IF THAT, IN FACT, IS THE LANGUAGE THAT PRUDENTIAL IS

7   RELYING ON TO ARGUE WHETHER IT HAS DISCRETION.  WHETHER

8   IT HAS DISCRETION, OF COURSE, IS SIGNIFICANT AND

9   RELEVANT TO THE COURT'S DETERMINATION OF WHAT STANDARD

10  OF REVIEW IS GOING TO APPLY IN THE CASE.

11      AND THIRD, THE LAST AREA IS TO DISCOVER THE

12  MEDICAL RECORDS THAT PRUDENTIAL SET -- SENT, I BELIEVE,

13  TO DR. WALLACE FOR EVALUATION OF PLAINTIFF'S CONDITION,

14  WHETHER IT'S FIBROMYALGIA OR CHRONIC PAIN SYNDROME OR

15  WHATEVER IT IS.  AND CLEARLY WITHOUT KNOWING WHAT

16  RECORDS DR. WALLACE HAD TO REVIEW, THE COURT IS NOT IN A

17  POSITION TO KNOW WHETHER PRUDENTIAL'S DECISION WAS

18  REALLY BASED ON THE RECORD OR NOT BASED ON THE RECORD.

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 7 of 19

19  AND SO IT SEEMS TO ME THAT AT A MINIMUM IN ANY OF THESE

20  CASES, EVEN IF THERE WERE NO DISPUTE AS TO THE LANGUAGE

21  OF THE PLAN AND WHETHER IT GRANTED DISCRETION TO THE

22  PLAN OR WHAT LANGUAGE IN WHICH DOCUMENTS IS INCLUDED IN

23  THE PLAN, THE PLAINTIFF WOULD ALWAYS HAVE A RIGHT TO

24  KNOW EXACTLY WHAT DOCUMENTS WERE GIVEN TO A MEDICAL

25  CONSULTANT TO LOOK AT INWARD OR TO EVALUATE HOW THE --


Huntington Court Reporters & Transcription
4


1  THE PLAN WHETHER IT RELIED ON THAT EXPERT'S OPINION AND

2  WHETHER IT WAS PROPER TO RELY ON THAT EXPERT'S OPINION

3  BASED UPON WHAT THAT EXPERT HAD IN FRONT OF HIM OR HER.

4      IT HAD BEEN ABOUT A YEAR OR TWO SINCE I'VE HAD

5  AN ARISTA CASE DEALING WITH DISCOVERY, SO I USED THIS

6  OPPORTUNITY TO LOOK AT A CASE I HADN'T SEEN BEFORE,

7  WHICH I FOUND VERY INTRIGUING, AND THAT WAS THE GROSS

8  SOLOMON VERSUS PAUL REVERE LIFE INSURANCE COMPANY CASE

9  AT 237 F.3D 1154.  I THINK THAT CASE DOES SUPPORT THE

10  PLAINTIFF'S VIEW THAT IT HAS A RIGHT TO DO DISCOVERY ON

11  WHAT IS PART OF THE PLAN AND WHAT IS NOT PART OF THE

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 8 of 19

12  PLAN AND WHETHER THE DOCUMENT THAT WE'VE BEEN

13  DISCUSSING, THE SUMMARY PLAN DESCRIPTION, IS, IN FACT,

14  PART OF THE PLAN OR NOT PART OF THE PLAN.

15      I THINK THAT'S AN INTERESTING ISSUE THAT'S

16  COMPLETELY DIFFERENT THAN FINDING OUT IF THERE'S ANY

17  CONFLICT IN THE ROLE OF THE ADMINISTRATOR, AND I ACCEPT

18  MR. DEAN'S -- OR REPRESENTATIONS IN THIS JOINT

19  STIPULATION THAT THE DISCOVERY DOESN'T GO TO THAT ISSUE

20  AS TO WHETHER IT'S A CONFLICT.  IT GOES TO COMPLETELY

21  DIFFERENT ISSUES THAT I FIND TO BE -- ARE RELEVANT.

22      I ALSO TOOK THE OPPORTUNITY TO DO DISCOVERY

23  GENERALLY OF OTHER DISTRICT COURTS TO SEE HOW MUCH

24  DISCOVERY WAS BEING ALLOWED IN THESE ARISTA CASES NOW.

25  AND I WAS INTRIGUED BY THE FACT THAT ACROSS THE BOARD

Huntington Court Reporters & Transcription
5

1  NATIONALLY, COURTS ARE ALLOWING DISCOVERY IN ARISTA

2  CASES AND NOT LIMITING ON THE CASE NECESSARILY TO WHAT'S

3  IN THE ADMINISTRATIVE RECORD WHEN THEY FIND THAT THERE'S

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 9 of 19

4   A REASON TO DO THE DISCOVERY, AND HERE I THINK THERE IS

5   A REASON AND THAT THE DISCOVERY IS LIMITED IN WHAT IT'S

6   SEEKING AND, TWO, SEEKS RELATIVE INFORMATION.

7        SO HAVING FOUND THAT PLAINTIFF IS SEEKING

8   RELEVANT INFORMATION, I DID NOT FIND GOOD CAUSE TO GRANT

9   A PROTECTIVE ORDER; AND, THEREFORE, I FOUND THAT THE

10  DEFENDANT HAD NOT MET ITS BURDEN UNDER RULE 26C FOR THE

11  ISSUANCE OF A PROTECTIVE ORDER, AND I PLAN ON DENYING

12  THE REQUEST FOR A PROTECTIVE ORDER.

13       SO SINCE THAT'S MY TENTATIVE RULING, I'LL TURN

14  TO COUNSEL FOR THE DEFENDANT, WHOSE MOTION I AM DENYING,

15  AND LET YOU ARGUE FIRST.  PLEASE FEEL FREE TO ARGUE.

16       WHICH ONE OF YOU IS DOING THE ARGUING?

17       MR. DORNY:  YOUR HONOR, LOU DORNY.

18       THE COURT:  OKAY.

19       MR. DORNY:  BRIEFLY, YOUR HONOR.  IN LARGE

20  PART, DEFENDANT WILL SUBMIT TO YOUR HONOR'S TENTATIVE.

21  IF I CAN RAISE AN ISSUE WHICH I -- I THINK WAS PERHAPS

22  OVERLOOKED BECAUSE IT MADE UP A VERY SMALL PORTION OF

23  THE PROPOSED DISCOVERY.

24       PLAINTIFF'S PROPOSED DISCOVERY INCLUDES TWO

25  PARTICULAR ITEMS AT THE VERY TAIL END OF THE REQUEST

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 10 of 19

Huntington Court Reporters & Transcription

6

1  THAT I THINK ARE BURDENSOME --

2      THE COURT:  HOLD ON.  THIS IS THE EXHIBIT TO

3  MS. LUCY'S DECLARATION THAT HAS THE ACTUAL DISCOVERY IN

4  IT, AND THE INTERROGATORIES ARE "A," AND THE REQUESTS

5  ARE "B."  WHAT ARE YOU TALKING ABOUT?

6      MR. DORNY:  CORRECT, YOUR HONOR.  I WOULD ASK

7  YOU TO TURN TO EXHIBIT B.

8      THE COURT:  "B."  OKAY.

9      MR. DORNY:  EXHIBIT B AT REQUEST FOR

10  PRODUCTION.  PRODUCTION NOS. 22 AND 23.

11      THE COURT:  OKAY.

12      MR. DORNY:  I WOULD JUST REQUEST THAT YOUR

13  HONOR WOULD EXAMINE THOSE AND CONSIDER THE ARGUMENT THAT

14  THESE ARE TRULY BURDENSOME AND NOT LIKELY TO ASSIST ANY

15  COURT UNDER ANY STANDARD OF REVIEW.

16      THE COURT:  OKAY.

17      MR. DORNY:  CERTAINLY NO. 23.  WE'RE ASKED TO

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 11 of 19

18  PRODUCE ANY STIPULATION FILED IN ANY COURT IN THE UNITED

19  STATES.

20       THE COURT:  WELL, I ACTUALLY DIDN'T GO THROUGH

21  REQUESTS NUMBER BY NUMBER BECAUSE THE JOINT STIPULATION

22  DIDN'T FOCUS ON ANY PARTICULAR NUMBERS BUT TREATED

23  EVERYTHING GENERICALLY.

24       MR. DORNY:  THAT'S TRUE.

25       THE COURT:  AND SO THAT'S THE APPROACH I TOOK.


       Huntington Court Reporters & Transcription
                        7



1       MR. DORNY:  UNDERSTOOD.

2       THE COURT:  AND IN THE FUTURE, FRANKLY, IF YOU

3  REALLY HAVE SPECIFIC NUMBERS --

4       MR. DORNY:  UH-HUH.

5       THE COURT:  -- THAT YOU HAVE DIFFERENT

6  ARGUMENTS TO MAKE, YOU REALLY HAVE TO POINT THAT OUT IN

7  THE JOINT STIPULATION.

8       MR. DORNY:  I AGREE, YOUR HONOR.

9       THE COURT:  BUT I'LL LOOK AT REQUEST NO. 22 AND

10  23 SEPARATELY BECAUSE YOUR VIEW IS, ONE, THEY'RE NOT

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 12 of 19

11  RELEVANT; OR, TWO, THEY'RE BURDENSOME.  WHAT IS YOUR

12  ARGUMENT?

13        MR. DORNY:  HERE THE -- IT'S A TWO-FOLD

14  ARGUMENT.

15        NUMBER 1, THEY ARE BURDENSOME TO REQUEST A

16  STIPULATION FILED IN ANY COURT ASSUMES THAT, A,

17  PRUDENTIAL MAINTAINS THAT INFORMATION, TWO, IF WE HAVE

18  TO INITIATE THAT PROCESS TO COLLECT IT.

19        AND HERE, YOUR HONOR, I'M NOW SPECIFICALLY

20  LOOKING AT NO. 23.  NUMBER 23 SEEKS A STIPULATION

21  WHEREVER THE PARTIES HAVE STIPULATED TO, QUOTE, WHEN

22  PRUDENTIAL DETERMINES, END QUOTE, IS OR IS NOT

23  SUFFICIENT TO GRANT A DISCRETIONARY AUTHORITY.

24        YOUR HONOR, THERE IS A RECENT DECISION

25  IDENTIFIED IN THE JOINT STATEMENT BY MR. DEAN IN THE

Huntington Court Reporters & Transcription
8

1  SEVENTH CIRCUIT IN WHICH THAT DECISION OVERTURNED THE

2  DECISION TO GRANT DISCRETION TO PRUDENTIAL.  WE ARE NOT,

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 13 of 19

3   WILL NOT -- AND I'LL BE HAPPY TO BE QUOTED -- EVER

4   CONTEND THAT THE PHRASE "WHEN PRUDENTIAL DETERMINES"

5   CONFERS DISCRETIONARY AUTHORITY.

6        THE COURT:  WAS THAT THE DIAZ CASE OR SOMETHING

7   LIKE THAT?

8        MR. DORNY:  YES.

9        THE COURT:  HOLD ON.  I'M SORRY.  I THINK I

10  LOOKED AT THAT.

11       MR. DORNY:  AND THAT'S A VERY RECENT DECISION.

12       THE COURT:  YEAH, IT WAS.  AND I REMEMBER

13  SEEING IT, AND I LOOKED -- I LOOKED AT IT.  I RELOOKED

14  AT TREMAINE.  YEAH, I DID.  I ACTUALLY EDITED IT OUT.  I

15  DID REREAD IT.  I DID READ IT, DIAZ VERSUS -- IT'S NOW

16  OFFICIALLY CITED AT 424 F. 30, 635.  AND I DON'T THINK

17  THAT OFFICIAL CITE WAS IN THE JOINT STIP.  I THINK IT

18  WAS JUST THE --

19       MR. DORNY:  THE --

20       THE COURT:  (INAUDIBLE) OR (INAUDIBLE)

21  WHATEVER.  OKAY.

22       MR. DORNY:  I THINK THAT'S RIGHT.  AND BECAUSE

23  OF THAT, WE ARE NOT RELYING AND NOWHERE IN OUR JOINT

24  STATEMENT DO I IDENTIFY THAT WE WILL BE RELYING ON THAT.

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 14 of 19

25   I -- I DON'T THINK IT'S -- FIRST OF ALL, IT IS


Huntington Court Reporters & Transcription
9




1   BURDENSOME.  AND SECONDLY, IN TERMS OF RELEVANCY, COULD

2   IT BE RELEVANT TO DETERMINE WHAT MANY OTHER PARTIES IN

3   DIFFERENT JURISDICTIONS POTENTIALLY BUT --

4        THE COURT:  PROBABLY --

5        MR. DORNY:  BURDENSOME (INAUDIBLE) --

6        THE COURT:  LIMITED.  YEAH.

7        MR. DORNY:  RIGHT, YOUR HONOR.  WITH THAT, THE

8   DEFENDANTS SUBMIT.

9        THE COURT:  OKAY.

10        RESPONSE.

11        MS. CHANDLER:  GOOD MORNING, YOUR HONOR.  AS

12   FAR AS THESE LAST TWO DISCOVERY REQUESTS, THEY WERE

13   REQUESTED BECAUSE PRUDENTIAL HAS TAKEN IN -- PRUDENTIAL,

14   NOT OTHER PARTIES, BUT PRUDENTIAL, HAS TAKEN

15   INCONSISTENT POSITIONS WITHIN THE STATE OF CALIFORNIA --

16        THE COURT:  WELL, LET'S TALK ABOUT THIS

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 15 of 19

17  LITIGATION.

18      MS. CHANDLER:  OKAY.  REGARDING WHETHER THIS

19  LANGUAGE IS SUFFICIENT TO GRANT DISCRETION.

20      THE COURT:  AND WHAT'S YOUR POSITION IN THIS

21  LITIGATION?

22      MS. CHANDLER:  IN THIS POSITION -- IN THIS

23  LITIGATION, AS I UNDERSTAND MR. DORNY'S CURRENT

24  REPRESENTATION, THEY ARE CONTENDING THAT IT IS NOT

25  SUFFICIENT --

            Huntington Court Reporters & Transcription
                            10

1       THE COURT:  OKAY.

2       MS. CHANDLER:  -- TO GRANT DISCRETION.

3  HOWEVER, IT IS -- THIS TYPE OF DISCOVERY WOULD BE

4  INDICATIVE THAT IT HAS CLAIMED THAT IN THE PAST.

5       THE COURT:  YEAH.  SO?  YOU CAN'T APPLY

6  JUDICIAL ESTOPPEL TO DIFFERENT CASES.

7       MS. CHANDLER:  NO.  BUT YOU CAN USE IT IF THEY

8  HAVE TAKEN AN INCONSISTENT POSITION REGARDING IDENTICAL

9  LANGUAGE IN OTHER CASES.  THEN I THINK THAT IT WOULD BE

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...20Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 16 of 19

10  RELEVANT.

11       THE COURT:  WELL, NOT IF IT DOESN'T HELP YOU.

12       MS. CHANDLER:  IF IT --

13       THE COURT:  I DON'T SEE HOW THE POSITION YOU'RE

14  TAKING HERE HELPS YOU.  LET'S PUT IT THAT WAY.

15       MS. CHANDLER:  IF -- IF PRUDENTIAL IS WILLING

16  TO STIPULATE THAT IT -- THAT THAT LANGUAGE DOES NOT

17  CONFER DISCRETION UPON IT, THEN -- THEN I AGREE WITH

18  YOU, YOUR HONOR.

19       THE COURT:  THE LAWYER JUST SAID IT HERE ON THE

20  RECORD.  YOU CAN GET A TRANSCRIPT.

21       MS. CHANDLER:  I WILL.

22       THE COURT:  IS THAT YOUR STATEMENT, MR. DORNY?

23       MR. DORNY:  YES, YOUR HONOR.  IT'S CERTAINLY IN

24  LIGHT OF DIAZ.  I WOULDN'T BE SO BOLD AS TO EVER TAKE

25  THAT (INAUDIBLE) --

Huntington Court Reporters & Transcription
11

1       THE COURT:  I MEAN, IT'S BAD ENOUGH WHEN YOU

2  GET ONE CIRCUIT GOING AGAINST YOU.  YOU CERTAINLY DON'T

3  WANT MULTIPLE CIRCUITS PUBLISHING OPINIONS AGAINST YOU.

4  ESPECIALLY WHEN YOU'RE THE SAME LAW FIRM; RIGHT?  OKAY.

5       MS. CHANDLER:  THANK YOU.

6       THE COURT:  ALL RIGHT.  THEN I WILL LOOK AT 22

7  AND 23 OF THE REQUEST MORE CLOSELY, AND THIS --

8  UNFORTUNATELY, I'VE GOT CRIMINAL DUTY THE REST OF TODAY.

9  BUT THIS OPINION SHOULD GO OUT BY FRIDAY OF THIS WEEK.

10  AND IT WILL BE DENIED, THE PROTECTIVE ORDER.

11       NOW, HAVING SAID THAT, THAT DOESN'T MEAN

12  THAT -- LET'S JUST LEAVE IT AT THAT.  IT WILL BE DENIED,

13  THE PROTECTIVE ORDER.  IT MAY MEAN THAT I WILL READ

14  THROUGH THE REQUESTS THAT WERE POINTED OUT BY MR. DORNY

15  AND SEE IF THEY'RE AN EXCEPTION TO MY GENERAL FINDING

16  THAT THE DISCOVERY IS SEEKING RELEVANT AND UNBURDENSOME

17  INFORMATION AND THE REPORT OF A GOOD CAUSE HASN'T BEEN

18  MET FOR A PROTECTIVE ORDER.  OKAY?

19       MS. CHANDLER:  ALL RIGHT.

20       THE COURT:  ALL RIGHT.

21       MS. CHANDLER:  THANK YOU.

22       MR. DORNY:  YOUR HONOR, JUST LAST MINUTE.

23  THERE IS PENDING DISCOVERY, AND IN LIGHT OF YOUR HONOR'S

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 18 of 19

24  DECISION, WE WILL WORK IN GOOD FAITH WITH PLAINTIFF'S

25  COUNSEL TO MEET AND CONFER AND RESOLVE THOSE ISSUES

Huntington Court Reporters & Transcription
12

1  WITHOUT ASSISTANCE OF THIS COURT.

2       THE COURT:  WELL, THAT'S ALWAYS GOOD BECAUSE

3  WE'RE PRETTY BUSY RIGHT NOW.  WE'RE DOWN TO ABOUT FIVE

4  JUDGES.  SO WE'RE PRETTY OVERWORKED.

5       OKAY.  ANYTHING ELSE?

6       MS. CHANDLER:  THAT'S IT.

7       MR. DORNY:  THANK YOU, YOUR HONOR.

8       MS. CHANDLER:  THANK YOU, YOUR HONOR.

9       THE COURT:  THANK YOU.  WE'RE ADJOURNED.

10

11

12

13

14

15

file:///C|/Documents%20and%20Settings/Ron%20Dean/My%20Documents/...Files/205%20transcript%20of%20discovery%20motion%20hearing.txt

Case 1:05-cv-11283-NG    Document 15-3    Filed 06/22/2006    Page 19 of 19

16

17

18

19

20

21

22

23

24

25

Huntington Court Reporters & Transcription
13