UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA MCCOY,<br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>STATE STREET CORPORATION,<br>Defendants | C.A. NO. 05-11283NG |

**DEFENDANT'S, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT/JUDGMENT ON THE RECORD**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, The Prudential Insurance Company of America (hereinafter referred to as "Prudential") submits this memorandum of law in support of its motion for summary judgment on the record. Prudential is entitled to summary judgment as a matter of law since the administrative record establishes that Prudential's decision to deny benefits to Plaintiff was not arbitrary and capricious as it was supported by substantial evidence.

**PROCEDURAL HISTORY**

Plaintiff, Teresa McCoy ("McCoy"), filed suit on or about June 17, 2005 in the United States District Court for the District of Massachusetts to recover long term disability benefits under a group insurance policy issued by Prudential to the Plaintiff's employer, State Street Bank and Trust Company ("State Street"). The parties agreed to stay the matter to complete the internal appeals process with Prudential. The stay was lifted on March 13, 2006. McCoy filed an Amended Complaint on or about May 8, 2006. In her Amended Complaint (hereinafter referred to as "Compl."), McCoy sought to recover benefits under the Plan through ERISA's

62991.3

1

civil enforcement provision, 29 U.S.C. 1132; ERISA § 502. Compl. ¶¶16-20.  The parties agree that the Plaintiff's claims relate to an employee welfare benefit plan and are governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Compl. ¶ 7; Answer ¶ 7.  The Plaintiff's claims fall under section 502(a)(1)(B) of ERISA.  *See Wickham v. Northwestern Nat'l Ins. Co.,* 908 F. 2d 1077, 1082 (1st Cir.), *cert. Denied,* 498 U.S. 1013 (1990).[1]

On March 13, 2006, Judge Gertner held a status conference and the Court adopted the parties' proposed discovery and motion schedule shortly thereafter on April 4, 2006.  Prudential filed its Amended Answer to Plaintiff's Complaint on May 11, 2006.  Plaintiff filed a Motion to Establish the Standard of Review as *De Novo* on June 22, 2006.  The Agreed to Record for Judicial Review was filed with the Court on June 26, 2006.  Prudential opposed the Plaintiff's Motion to Establish the Standard of Review as *De Novo* on July 10, 2006.  On July 31, 2006, this Court denied the Plaintiff's Motion and determined the applicable standard of review was arbitrary and capricious.  No discovery has been conducted prior to the submission of motions for summary judgment.

## SUMMARY OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff filed this action seeking long term disability benefits under Group Contract No. GW-23404 issued by Prudential to State Street Bank and Trust Company, which is an employee welfare benefit plan governed by ERISA.  State Street sponsored and administered the Long Term Disability Insurance Plan ("Plan"), TM 00001-00041[2], Prudential's Amended Answer ¶17 (hereinafter referred to as "Answer").  Prudential underwrites the Plan's long-term

---

[1] With respect to civil actions brought by Plan participants or beneficiaries to recover plan benefits, 29 U.S.C. §1132 provides, in part, as follows:
   (a)    A civil action may be brought --
          (1)  by a participant or beneficiary --…
   (B)    to recover benefits due him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan…

[2] Citations to the documents labeled "TM xxxx" are to documents contained in the Agreed to Record for Judicial Review filed with the Court on June 26, 2006.

2

62991.3

disability benefits and it serves as the claims administrator of claims submitted by plan participants for long term disability benefits. TM 00001-00041, Answer ¶ 17.

Because this Court has already determined that the applicable standard of review is arbitrary and capricious, this Court, as the reviewing court, must uphold Prudential's claim decision if it is within the administrator's authority, reasoned and supported by substantial evidence in the record. Specifically, Plaintiff's claim for benefits due to headaches was not supported by medical evidence which substantiated an inability to sustain sedentary employment. Moreover, Prudential's decision to deny benefits was based on a review of all of the medical information, the review of records by an independent physician, Board Certified in Neurology, an assessment of her activity level and surveillance documenting her functional abilities. Inasmuch as the decision in the instant case on the Plaintiff's claim is within Prudential's authority, is reasoned and is supported by substantial evidence in the record, Prudential is entitled to summary judgment on the undisputed facts as a matter of law.

## I.   FACTS OF RECORD FOR REVIEW

**Record for Review**

In an ERISA denial of benefits action, where abuse of discretion is the standard of review, the ordinary rule is that review is limited to the record made before the entity being reviewed, which, in this instance, is Prudential. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003). The proper record to be considered by the Court is the record before Prudential when it made its final claim decision. See Kiley v. Travelers Indem. Co., 853 F. Supp. 6, 14 (D. Mass. 1994)("at least in the context of applying deferential standard of review, this Court will limit the record to the facts before [the claims administrator] absent further guidance from the First Circuit"). In Liston, the First Circuit stated that "at least some very good

reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." Id.

On June 26, 2006, the parties filed an agreed-upon Record for Judicial Review. The Record contains the documents that the parties agree were before Prudential when it made its final benefit determination and consists of 618 pages of documents and a CD-rom. The full record for judicial review is now before the Court. TM00001- TM 000619. Based on the standard of review, the scope of review and the Record, Prudential is entitled to summary judgment as a matter of law. Pursuant to Local Rule 56.1, Prudential refers the Court to its Statement of Material Facts of Record for a complete factual overview of this matter. For the convenience of the Court, pertinent facts are outlined here.

**The Parties and The Plan**

The Plan was established and was maintained by McCoy's former employer, State Street Bank and Trust Company ("State Street"). TM 00001-00041. Prudential underwrites the plan's long-term disability benefits and it serves as the claims administrator of claims submitted by plan participants for long term disability benefits. TM 00001-00041, Answer ¶ 17. Plaintiff was a DS Representative as State Street Bank. TM 00566. Pursuant to the terms of the Plan with regard to claims for total disability benefits, the Plan's Booklet-Certificate provides as follows, a policyholder is considered disabled when Prudential determines that all of these conditions are met:

> You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> You have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

62991.3

> "After 24 months of payment, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience." TM 00013.

The Plan further provides,

> "Disabilities due to sickness of injury which, as determined by Prudential, are primarily based on **self-reported symptoms** have a limited pay period during your lifetime…The limited pay period for self-reported symptoms and mental illness is 24 months during your lifetime." TM 0021.

The Plan states, "…you must send Prudential written proof of claim no later than 90 days after your elimination period ends." TM 00026. The Plan also states that a claimant must meet a 26 week elimination period. TM 00004.

**Plaintiff's Claim for Benefits and Prudential's Initial Decision**

Plaintiff applied for Short Term Disability Benefits on or about June 14, 2002. TM 00544. Prudential denied her claim for STD benefits on or about June 18, 2002. TM 00615-00618. Prudential reviewed the medical information submitted by Plaintiff. TM 00616. The elimination period was from May 20, 2002 through May 23, 2002. TM 00616. Prudential determined that Plaintiff did not meet the definition of Total Disability. TM 00616. Prudential determined that the medical documentation submitted with her claim did not support a condition/impairment that would extend beyond the elimination period. TM 00616.

**Plaintiff's First Appeal and Prudential's Decision on the First Appeal**

Plaintiff appealed the initial decision on August 19, 2002 and Prudential upheld its decision on October 9, 2002. TM 00609-00611. Prudential noted that McCoy's first day out of work was May 17, 2002 due to headaches and fatigue. TM 00610. Prudential's review of the initial medical information indicated that the severity or intensity of McCoy's headaches did not support total disability beyond the normal 3 to 4 days recovery. TM 00610. As part of the

review of McCoy's appeal request, Prudential performed a clinical review of the medical documentation from Dr. Vittug along with an Activities of Daily Living ("ADL") questionnaire completed by McCoy. TM 00610. Prudential noted in its decision that according to Dr. Vittug on May 23, 2002, while McCoy's headaches were of moderate intensity in the morning and at bedtime, they had improved and she did not have photophobia, nausea or phonophobia. Dr. Vittug also noted she was well-rested and alert and that all objective testing and physical examination were negative. TM 00160. Prudential noted that the ADL questionnaire indicated that McCoy was able to cook, drive, manage financial household affairs, read novels, watch TV, perform household chores with her husband's assistance (laundry, dishes, mopping etc…), shop and care for her two children for approximately 14 hours per day. TM 00610, ADL questionnaire TM 00496-00503. Prudential was informed by State Street that a DS Representative spends approximately two (2) hours on a computer, spends 6 hours sitting, spends a ½ hour at most walking (cafeteria and interdepartmental), lifts no more than 15lbs and has minimal to no customer service duties. TM 00566. Prudential determined that McCoy's level of activity and functional abilities at home suggested she would be able to perform the duties required for her job. TM 00610.

**Plaintiff's Second Appeal and Prudential's Decision on the Second Appeal**

Plaintiff appealed again on April 3, 2003 and Prudential upheld its original decision on April 30, 2003. TM 00603-00605. In its decision on April 30, 2003, Prudential performed a second clinical review of the information contained in the file. TM 00604. Prudential noted that McCoy had been diagnosed with tension-type headaches during the third trimester of pregnancy with her second child. TM 00604. Prudential reviewed records which indicated that McCoy returned to work after the birth of that child and that she had an exacerbation of headaches upon

6

62991.3

her return, which Dr. Vittug opined was due to the lack of sleep since she had to get up at 4am to get to work on time.  TM 00604.  Prudential noted McCoy consulted with Dr. Rizzoli in November of 2002 and that Dr. Rizzoli indicated her diagnosis was acute onset of daily headaches and rule out secondary headaches.  Dr. Rizzoli noted no other symptoms with the headaches and no positive test results.  TM 00604.  No limitations were placed on McCoy by either Dr. Rizzoli or Dr. Vittug. TM 00604.  Based on its review of this information, Prudential determined that the available medical documentation did not support an impairment which would prevent McCoy from performing her regular occupation. TM 00605.  While McCoy in her appeal stated her activities were limited due to the side effects of her medications, including drowsiness, listlessness and fatigue, the side effects were not reflected in the examinations of Dr. Vittug or Rizzoli.  TM 00605.

**Plaintiff's Final Appeal and Prudential's Decision on the Final Appeal**

Plaintiff submitted her final appeal of Prudential's decision on September 13, 2005. TM 00257-00269.  Plaintiff's appeal stated McCoy was unable to perform the duties of her regular occupation due to symptoms related to migraines and non-specific headaches.  TM 00257-00269. Prudential acknowledged receipt of Plaintiff's final appeal by letter on October 5, 2005. TM 00598.  As part of its review of the Plaintiff's final appeal, Prudential obtained surveillance of the Plaintiff.  See Surveillance Video, TM 00619 and report, TM 00252-00255.  The surveillance video on November 3, 2005 showed Plaintiff waiting for the school bus with her children, holding her younger child and driving. TM 00619.  On November 4, 2005, the surveillance video showed Plaintiff taking her children out to the bus stop, carrying a child, walking around outside, driving for ten minutes, driving to Filene's and shopping at a mall for half an hour, driving to another location with her child and then going back home to wait for her older child to get off the

school bus. TM 00619.  On November 12, 2005, the surveillance video showed Plaintiff driving herself, her two kids and her husband to Wal-Mart where they shopped for 35 minutes.  TM 00619.  Plaintiff was able to lift and carry bags into the car. TM 00619.  After the trip to Wal-Mart, Plaintiff got behind the wheel again and drove with her husband and her kids to a grocery store where they shopped. TM 00619.  Later on that same day, the video showed Plaintiff outside on her deck with her husband and an unidentified man. TM 00619.

   Prudential also, as part of its final review, had an independent physician, Dr. Martin Gizzi, of the New Jersey Neuroscience Institute, perform a records review.  TM 00596-00597.  Prudential instructed Dr. Gizzi to review the medical records and the surveillance CD and report provided to determined whether McCoy had a neurological impairment from May 20, 2002 through November 18, 2002. TM 00596.  Prudential also instructed Dr. Gizzi to identify restrictions and limits, comment on treatment, duration and prognosis of any significant impairment, determined whether the medical records supported significant adverse side effects from medication, determine whether McCoy's self-reported level of pain and decreased functionality was consistent with the activities noted in the surveillance and if Dr. Gizzi opined that McCoy was not functionally impaired, that a detailed explanation must be given.  TM 00597.  In response to Prudential's requests, Dr. Gizzi provided Prudential with his report.  TM 00168-169, TM 00165 (Dr. Gizzi's report is not in numerical order, hence the multiple citations.).  Dr. Gizzi reviewed medical and pharmacy records, SOAP notes from Prudential, webpage printouts referring to headaches and headache specialists included with Plaintiff's appeal, a questionnaire regarding Activities of Daily Living filled out by Plaintiff and letters from Plaintiff's attorneys. TM 00168-00169.  Specifically, as to medical records, Dr. Gizzi reviewed records from Dr. Saperia, Dr. McNeil, Dr. Vittug, Dr. Hayes, Dr. Chilazi, Spaulding

8

62991.3

Rehabilitation Hospital, Dr. Cornelissen, physical therapy records from JBL Rehabilitation Associates, Record of Admission from Good Samaritan Medical Center, and Dr. Rizzoli. TM 00168-00169.  Dr. Gizzi's records review revealed that Plaintiff had been treating for ulnar neuropathy, and between 1998 and 2004, she had been prescribed Neurontin, Percoset and amitriptyline for the ulnar neuropathy by Dr. Stephen McNeil.  TM 00169.  Dr. Gizzi's records review indicated that pharmacy records from March 4, 2002 through September 16, 2002 indicated she was filling prescriptions for Fioricet, OxyIR, Percoset, Amitriptyline, Indomethacin, Durgesic and cyclobenzaprine. TM 00169.  Dr. Gizzi noted that the records from Spaulding Rehabilitation Hospital repeatedly recommended that Plaintiff pursue PT and OT for her headache and as of January 19, 2004, Dr. Loder noted that Plaintiff again had not had a chance to begin physical therapy or occupation therapy.  TM 00169.

Dr. Gizzi opined that the medical records and history were consistent with the diagnosis of chronic daily headaches.  TM 00165.  Dr. Gizzi also opined that Plaintiff did not suffer from migraine headaches and concluded that the chronic daily headache may be secondary to the excessive number of analgesics Plaintiff had been taking for years. TM 00165.  Dr. Gizzi further opined that chronic daily headache is rarely, if ever, disabling. TM 00165.  Dr. Gizzi concluded that from the records review, Plaintiff did not have neurological impairments from May 20, 2002 through November 18, 2002 forward.  TM 00165.  Dr. Gizzi also concluded that there are no restrictions that need to be placed on Plaintiff's employment and that the record did not support any significant or sustained side effects from medications. TM 00165.  Dr. Gizzi concluded that the surveillance tapes did not support the claim that Plaintiff was disabled by pain or medication side effects. TM 00165.

On January 30, 2006, Prudential completed its review of McCoy's third request for

9

62991.3

reconsideration of Prudential's decision to disallow McCoy's claim for STD and LTD benefits. TM 00592-00595. Prudential upheld its prior decision to deny McCoy's claim for benefits. TM 00592. Prudential's decision was based on its review of the medical information in the file, along with the external medical file review of all medical documentation by Dr. Gizzi, a review of the ADL completed by McCoy, the surveillance of McCoy's activities, and the policy terms and conditions. TM 00593-00594. Prudential noted in its decision letter that Dr. Vittug opined McCoy's headaches did not have migraine characteristics and were tension headaches. TM 00594. Prudential noted that Dr. Rizzoli indicates McCoy's diagnosis was secondary headaches versus migraine. TM 00594. Prudential also noted that Dr. Gizzi's review indicated that McCoy's symptoms did not have the characteristics of migraine and that chronic daily headaches were rarely, if ever, disabling. TM 00594. Prudential determined that the medical documentation did not support an impairment related to reports of medication side effects. TM 00594. Prudential noted that the ADL indicated McCoy was able to cook, clean, handle household finances and take care of her children. TM 00594.

Prudential concluded that while McCoy may experience symptoms and continue with treatment for her condition, the medical evidence did not support a sickness or injury that would continuously preclude her from performing the material and substantial duties of her regular occupation. TM 00594. Prudential concluded that the medical records did not support a neurological impairment or any significant or sustained side effects from mediation. TM 00594. Also, Prudential determined that McCoy did not satisfy the elimination period for LTD benefits which would have begun on November 18, 2002 and run for 26 weeks. TM 00595. Since McCoy's claim was disallowed prior to satisfying the LTD elimination period, McCoy was not entitled to LTD benefits. TM 00595.

62991.3

II.  ARGUMENT

**A. An ERISA Action is Ripe for Resolution by Summary Judgment Where the Standard of Review is Arbitrary and Capricious.**

When an arbitrary and capricious standard of review applies and review is based solely upon an agreed upon record, summary judgment is merely a mechanism for tendering the issues and no special inferences as to be drawn in favor of Plaintiff resisting summary judgment. Liston v. Unum Corp. Officer Severance Plan, 330 F. 3d 19, 24 (1st Cir. 2003).  ERISA denial of benefit actions often are decided at the summary judgment stage. Twomey v. Delta Airlines Pilots Pension Plan, et al., 328 F.3d 27, 31 (1st Cir. 2003); Terry v. Bayer, 145 F.3d 28 (1st Cir. 1998); McMahon v. Digital Equipment Corp., 162 F.3d 28, 39 (1st Cir. 1998). While Plaintiff may contend that there is contrary evidence regarding her disability, such contention does not change this analysis. Terry, 145 F.3d at 45. "[T]he facts of record, even viewed in the light most favorable to plaintiff, would be insufficient to convince any reasonable fact finder that [Prudential] acted arbitrarily and capriciously in determining that plaintiff was not entitled to Long Term Disability benefits." Karamshahi v. Northeast Utilities Service Co., 41 F. Supp. 2d 101, 103 (D. Mass. 1999).  The burden of proving total disability rests with McCoy. Terry, 145 F.3d at 34. To qualify for benefits under the Plan, a claimant must demonstrate an inability to perform the material and substantial duties of her occupation.  Plaintiff also has the burden of demonstrating that Prudential's denial of benefits was unreasonable. Id.  Inasmuch as Prudential's claim decision was supported by substantial evidence in the record, McCoy cannot satisfy her burden, and Prudential is entitled to judgment as a matter of law.

In accordance with Rule 56(c), this Court should grant Prudential's Motion for Summary Judgment because, as will be shown below, there are no issues of fact material to the plaintiff's claim.

11

**B.     Scope of Review Under Arbitrary and Capricious Standard**

When a claims administrator has discretion in administering an ERISA-regulated employee benefit plan, judicial review is limited to determining whether the administrator's action is arbitrary and capricious or without rational basis[3].  Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30 (1st Cir. 2001).  The abuse of discretion standard limits the grounds upon which a discretionary claim decision can be disturbed. In reviewing such a decision, a court may not "substitute its judgment" for that of the claim fiduciary. Terry, 145 F.3d at 40. It is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan interpretation and administration. Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8, 9 (1st Cir. 1985).

When vested with discretionary authority, it is the claim administrator's responsibility to weigh conflicting evidence. Vlass, 244 F.3d at 32. It is the claim administrator's responsibility to make factual findings relating to a claimant's condition. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 185 (1st Cir. 1998).  Under the Plan, it is Prudential's duty to determine whether a claimant is able to perform the material and substantial duties of his or her occupation due to sickness or accidental injury. TM 00001-00041.  Prudential's decision can be overturned only if the insurer's eligibility determination was unreasonable in light of the information available to it. Boardman v. The Prudential Insurance Company of America et al., 337 F.3d 9, 15 (1st Cir. 2003); Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F. 3d 415, 419 (1st Cir. 2000). "Contrarily, the insurer's decision must be upheld if it was within the insurer's authority, reasoned and supported by substantial evidence in the record." See Boardman citing Doyle, supra

---

[3] As mentioned in the procedural history section of this memorandum, this Court determined that the applicable standard of review is this matter was the arbitrary and capricious standard in its ruling on July 31, 2006.

at 184. "The existence of contrary evidence does not necessarily render Prudential's decision arbitrary." See Boardman citing Vlass, supra at 30.

The focus of this judicial review should be on the final decision made by Prudential in denying McCoy's claim for long term disability benefits. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 516 (D. Mass. 2005). Here, Prudential made a decision based on the terms and conditions of the Plan, clinical review of the medical record, external medical record review by a Board Certified Neurologist, surveillance video and report, and the medical information contained in its file. The decision letters of Prudential clearly state the reasoning for its initial decision to terminate benefits and the subsequent decisions to uphold its initial determination. (Initial Decision-TM 00615- TM 00618), First Appeal Decision- TM 00609- TM 00611), (Second Appeal Decision-TM 00603- TM 00605), (Final Appeal Decision-TM 00592- TM00595). Thus, Prudential's decision was clearly reasonable given the information available to it at the time of the decision and should be upheld.

**C. Prudential's Determination That Plaintiff Was Not Totally Disabled Is Reasonable And Should Be Upheld Because It Is Supported By Substantial Evidence in the Record.**

1. There Are Contractually Supportable Reasons for Denying Benefits

The evidence in the record is reasonably sufficient to support Prudential's conclusion that the Plaintiff has the capacity to perform the duties of a DS Representative. *See* Sullivan v. Raytheon Co., 262 F.3d 41, 51(1st Cir. 2001)(security guard's ability to perform work in a sedentary environment made him ineligible for LTD benefits). In making its claim decision, Prudential relied upon the Plan's definition of Total Disability and Elimination Period, the elimination period of 26 weeks contained in the Plan, the physical requirements of McCoy's

position at State Street, external medical record review, surveillance, and the Plaintiff's medical records.

In determining that Plaintiff did not meet the criteria of total disability, Prudential considered that under the Plan, the Plaintiff must be incapable of performing <u>the material and substantial duties of your regular occupation due to your sickness or injury</u>.  TM 00013.  (emphasis added).  Also, Prudential considered that under the Plan, the Plaintiff must meet a 26 week elimination period.  TM 00004.  In McCoy's position as a DS Representative, she would spend approximately two (2) hours on a computer, spends 6 hours sitting, spends a ½ hour at most walking (cafeteria and interdepartmental), lifts no more than 15lbs and has minimal to no customer service duties.  TM 00566.  Because McCoy was not awarded short term disability benefits, when her claim for long term disability benefits was reviewed, it was evaluated by Prudential on whether she could perform the material and substantial duties of her own occupation, a DS Representative.

In reaching its determination that McCoy could perform her own occupation, Prudential obtained an external record review by a Board Certified Neurologist, had surveillance to document Plaintiff's level of activity, reviewed all of the medical information contained in the file and evaluated her level of functioning as listed on the ADL questionnaire.  Given the fact the medical records contained no limitations and restrictions placed on McCoy by her treating physicians, the medical records review, the surveillance and the policy provisions, Prudential correctly concluded that McCoy did not meet the criteria of Total Disability as defined by the Plan.  Moreover, because McCoy was not awarded STD and did not meet the elimination period for LTD, Prudential denied her final appeal for benefits.  Thus, there were contractual reasons supporting the decision to terminate benefits.

2. <u>Substantial Evidence Exists to Support Prudential's Decision</u>

Substantial evidence exists within the record to support Prudential's decision.  Thus, the decision itself was not unreasonable under a deferential standard of review.  A reviewing court does not weigh the evidence and determine which side it believes is right.  <u>Doyle</u>, 144 F.3d at 184.  Rather, the reviewing court's role is limited to deciding whether the claim decision was supported by substantial evidence.  <u>Terry</u>, 145 F.3d 41.  In the First Circuit, substantial evidence is evidence that is reasonably sufficient to support a conclusion.  <u>Sullivan</u>, 262 F.3d at 51; <u>Doyle</u>, 144 F.3d at 184.  That test is met here and inasmuch as Prudential's decision was not lacking a "rational basis," the Court cannot disregard it.  <u>Govoni v. Bricklayers, Masons & Plasters Int'l Union of America, Local 5 Pension Fund,</u> 732 F.2d 250, 252 (1st Cir. 1984).  The existence of contrary evidence does not make Prudential's decision arbitrary.  <u>Vlass</u>, supra at 30.

At every step of the decision and appeal process, Prudential reviewed the medical evidence provided by McCoy and the Plan language in order to make determinations on McCoy's claim.  Prudential's final decision was based on not only the medical evidence but also on the contractual definitions of total disability as outlined in the Plan, the 26 week elimination period, the physical requirements of her occupation, the ADL questionnaire, an external medical record review by a Board Certified Neurologist, surveillance and a review of all of the information contained in the claims file.  This final decision should be the focus of this Court's review.  <u>Orndorf,</u> supra.

In its final decision, Prudential outlined its prior decisions of June 18, 2002, October 9, 2002 and April 3, 2003.  TM 00593.   The decision outlined the policy provisions which applied including the definition of total disability and the elimination period.  TM 00592.  Prudential noted that Plaintiff's appeal stated McCoy was unable to perform the duties of her regular

15

62991.3

occupation due to symptoms related to migraines and non-specific headaches. TM 00593. As part of its review of the Plaintiff's final appeal, Prudential obtained surveillance of the Plaintiff. In its decision, Prudential noted that the surveillance documented Plaintiff walking, waiting for a school bus, carrying her children, shopping, lifting and carrying shopping bags and driving. TM 00594. Prudential noted that the ADL questionnaire indicated McCoy was able to cook, clean, handle household finances and take care of her children. TM 00594.

Prudential also, as part of its final review, had an independent physician, Dr. Martin Gizzi, of the New Jersey Neuroscience Institute, a Board Certified Neurologist, perform a records review. Prudential reported that Dr. Gizzi noted that the records from Spaulding Rehabilitation Hospital repeatedly recommended that Plaintiff pursue PT and OT for her headache and as of January 19, 2004, Dr. Loder noted that Plaintiff again had not had a chance to begin physical therapy or occupation therapy. TM 00594. Prudential noted that Dr. Gizzi opined that the medical records and history were consistent with the diagnosis of chronic daily headaches. TM 00594. Prudential also noted that Dr. Gizzi opined that Plaintiff did not suffer from migraine headaches and concluded that the chronic daily headache may be secondary to the excessive number of analgesics Plaintiff had been taking for years. TM 00594. Prudential further noted in its decision that Dr. Gizzi opined that chronic daily headache is rarely, if ever, disabling. TM 00594.

Prudential noted in its decision letter that Dr. Vittug opined McCoy's headaches did not have migraine characteristics and were tension headaches. TM 00594. Prudential also noted that Dr. Rizzoli indicates McCoy's diagnosis was secondary headaches versus migraine. TM 00594. Based on this information, Prudential determined that the medical documentation did not support an impairment related to reports of medication side effects. TM 00594. Prudential concluded

16

62991.3

that while McCoy may experience symptoms and continue with treatment for her condition, the medical evidence did not support a sickness or injury that would continuously preclude her from performing the material and substantial duties of her regular occupation. TM 00594. Prudential concluded that the medical records did not support a neurological impairment or any significant or sustained side effects from mediation. TM 00594. Also, Prudential determined that McCoy did not satisfy the elimination period for LTD benefits which would have begun on November 18, 2002 and run for 26 weeks. TM 00595. Since McCoy's claim was disallowed prior to satisfying the LTD elimination period, McCoy was not entitled to LTD benefits. TM 00595.

Clearly, Prudential's decision contained evidence which is substantial, i.e. reasonably sufficient to support its conclusion. <u>Orndorf,</u> supra. Therefore, Prudential's final decision should be upheld by this Court.

## CONCLUSION

Based on the following undisputed material facts, Prudential requests that the Court issue an order granting Prudential's Motion for summary judgment.

Respectfully Submitted,
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA
By Their Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

155 Federal Street
Boston, MA 02110
(617) 422-5300

**Certificate of Service**

I, Carey Bertrand, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the NEF on August 17, 2006.

/s/ Carey Bertrand

62991.3