UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA MCCOY,<br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>STATE STREET CORPORATION,<br>Defendants | C.A. NO. 05-11283NG |

## DEFENDANT'S, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA LOCAL RULE 56.1 STATEMENT OF UNDISUPTED FACTS

Pursuant to L.R. 56.1 of the United States District Court for the District of Massachusetts, The Prudential Insurance Company of America Company (hereinafter referred to as "Prudential") submits this statement of material facts as to which Prudential contends there is no genuine issue necessary to be litigated.

### STATEMENT OF UNDISPUTED FACTS

The following is Prudential's L.R. 56.1 concise statement of all undisputed material facts:

<u>The Parties and The Plan</u>

1. The Plan was established and was maintained by McCoy's former employer, State Street Bank and Trust Company ("State Street"). TM 00001-00041.

2. Prudential underwrites the plan's long-term disability benefits and it serves as the claims administrator of claims submitted by plan participants for long term disability benefits. TM 00001-00041, Answer ¶ 17.

3. In her Amended Complaint, McCoy sought to recover benefits under the Plan

1

through ERISA's civil enforcement provision, 29 U.S.C. 1132; ERISA § 502. Compl. ¶¶16-20.

4. The parties agree that the Plaintiff's claims relate to an employee welfare benefit plan and are governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Compl. ¶ 7; Answer ¶ 7.

5. Plaintiff was a DS Representative as State Street Bank. TM 00566.

6. Pursuant to the terms of the Plan with regard to claims for total disability benefits, the Plan's Booklet-Certificate provides as follows: a policyholder is considered disabled when Prudential determines that all of these conditions are met:

   (1) You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

   (2) You have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

   "After 24 months of payment, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience." TM 00013.

7. The Plan further provides,

   "Disabilities due to sickness of injury which, as determined by Prudential, are primarily based on **self-reported symptoms** have a limited pay period during your lifetime…The limited pay period for self-reported symptoms and mental illness is 24 months during your lifetime." TM 0021.

8. The Plan states, "…you must send Prudential written proof of claim no later than 90 days after your elimination period ends." TM 00026.

9. The Plan further provides that "the proof of claim must show:
   (1)that you are under the **regular care** of a **doctor**.
   (2) the appropriate documentation of your monthly earnings.
   (3) the date your disability began.

2

(4) appropriate documentation of the disabling disorder.
(5) the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.
(6) the name and address of any **hospital or institution** where you received treatment, including all attending doctors.
(7) the name and address of any doctor you have seen." TM 00026.

10. The Plan contains an ERISA Statement which states, "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." TM 00036.

11. The Plan also states that a claimant must meet a 26 week elimination period. TM 00004.

Plaintiff's Claim for Benefits

12. Plaintiff applied for Short Term Disability Benefits on or about June 14, 2002 claiming that she suffered headaches and fatigue. TM 00544.

13. Prudential denied her claim for STD benefits on or about June 18, 2002. TM 00615- TM00618.

14. Prudential reviewed the medical information submitted by Plaintiff. TM 00616.

15. The elimination period was from May 20, 2002 through May 23, 2002. TM 00616.

16. Prudential determined that Plaintiff did not meet the definition of Total Disability. TM 00616.

17. Prudential determined that the medical documentation submitted with her claim did not support a condition/impairment that would extend beyond the elimination period. TM 00616.

18. Plaintiff appealed the initial decision on August 19, 2002 and Prudential upheld its decision on October 9, 2002. TM 00609-TM 00611.

3

19. Prudential noted that McCoy's first day out of work was May 17, 2002 due to headaches and fatigue. TM 00610.

20. Prudential's review of the initial medical information indicated that the severity or intensity of McCoy's headaches did not support total disability beyond the normal 3 to 4 days recovery. TM 00610.

21. As part of the review of McCoy's appeal request, Prudential performed a clinical review of the medical documentation from Dr. Vittug along with an Activities of Daily Living ("ADL") questionnaire completed by McCoy. TM 00610.

22. Prudential noted in its decision that according to Dr. Vittug on May 23, 2002, while McCoy's headaches were of moderate intensity in the morning and at bedtime, they had improved and she did not have photophobia, nausea or phonophobia. Dr. Vittug also noted she was well-rested and alert and that all objective testing and physical examination were negative. TM 00160.

23. Prudential noted that the ADL questionnaire indicated that McCoy was able to cook, drive, manage financial household affairs, read novels, watch TV, perform household chores (laundry, dishes, mopping etc..) with her husband's assistance, shop and care for her two children for approximately 14 hours per day. TM 00610, ADL questionnaire TM 00496-TM 00503.

24. Prudential determined that McCoy's level of activity and functional abilities at home suggested she would be able to perform the duties required for her job. TM 00610.

25. Prudential also obtained information from State Street about the level of physical activity in the position of DS Representative. TM 0566.

26. Prudential was informed by State Street that a DS Representative spends approximately two (2) hours on a computer, spends 6 hours sitting, spends a ½ hour at most walking (cafeteria and interdepartmental), lifts no more than 15lbs and has minimal to no customer service duties.  TM 00566.

27. Plaintiff appealed again on April 3, 2003 and Prudential upheld its original decision on April 30, 2003.  TM 00603-TM 00605.

28. In its decision on April 30, 2003, Prudential performed a second clinical review of the information contained in the file.  TM 00604.

29. Prudential noted that McCoy had been diagnosed with tension-type headaches during the third trimester of pregnancy with her second child.  TM 00604.

30. Prudential reviewed records which indicated that McCoy returned to work after the birth of her child and that she had an exacerbation of headaches upon her return, which Dr. Vittug opined was due to the lack of sleep since she had to get up at 4am to get to work on time.  TM 00604.

31. Prudential noted McCoy consulted with Dr. Rizzoli in November of 2002 and that Dr. Rizzoli indicated her diagnosis was acute onset of daily headaches and rule out secondary headaches.  Dr. Rizzoli noted no other symptoms with the headaches and no positive test results.  TM 00604.

32. No limitations were placed on McCoy by either Dr. Rizzoli or Dr. Vittug. TM 00604.

33. Based on its review of this information, Prudential determined that the available medical documentation did not support an impairment which would prevent McCoy from performing her regular occupation. TM 00605.

63290.1

34. While McCoy in her appeal stated her activities were limited due to the side effects of her medications, including drowsiness, listlessness and fatigue, the side effects were not reflected in the examinations of Dr. Vittug or Rizzoli. TM 00605.

35. Plaintiff submitted her final appeal of Prudential's decision on September 13, 2005. TM 00257-00269.

36. Plaintiff's appeal stated McCoy was unable to perform the duties of her regular occupation due to symptoms related to migraines and non-specific headaches. TM 00257-00269.

37. Prudential acknowledged receipt of Plaintiff's final appeal by letter on October 5, 2005. TM 00598.

38. As part of its review of the Plaintiff's final appeal, Prudential obtained surveillance of the Plaintiff. See Surveillance Video, TM 00619 and report, TM 00252- TM00255.

39. The surveillance video on November 3, 2005 showed Plaintiff waiting for the school bus with her children, holding her younger child and driving. TM 00619.

40. On November 4, 2005, the surveillance video showed Plaintiff taking her children out to the bus stop, carrying a child, walking around outside, driving for ten minutes, driving to Filene's and shopping at a mall for half an hour, driving to another location with her child and then going back home to wait for her older child to get off the school bus. TM 00619.

41. On November 12, 2005, the surveillance video showed Plaintiff driving herself, her two kids and her husband to Wal-Mart where they shopped for 35 minutes. Plaintiff was able to lift and carry bags into the car. TM 00619.

63290.1

42. After the trip to Wal-Mart, Plaintiff got behind the wheel again and drove with her husband and her kids to a grocery store where they shopped. TM 00619.

43. Later on that same day, the video showed Plaintiff outside on her deck with her husband and an unidentified man. TM 00619.

44. Prudential also, as part of its final review, had an independent physician, Dr. Martin Gizzi, of the New Jersey Neuroscience Institute, perform a records review. TM 00596-00597.

45. Prudential instructed Dr. Gizzi to review the medical records and the surveillance CD and report provided to determined whether McCoy had a neurological impairment from May 20, 2002 through November 18, 2002. TM 00596.

46. Prudential also instructed Dr. Gizzi to identify restrictions and limits, comment on treatment, duration and prognosis of any significant impairment, determined whether the medical records supported significant adverse side effects from medication, determine whether McCoy's self-reported level of pain and decreased functionality was consistent with the activities noted in the surveillance and if Dr. Gizzi opined that McCoy was not functionally impaired, that a detailed explanation must be given. TM 00597.

47. In response to Prudential's requests, Dr. Gizzi provided Prudential with his report. TM 00168-169, TM 00165 (Dr. Gizzi's report is not in numerical order, hence the multiple citations.)

48. Dr. Gizzi reviewed medical and pharmacy records, SOAP notes from Prudential, webpage printouts referring to headaches and headache specialists included with Plaintiff's appeal, a questionnaire regarding Activities of Daily Living filled out by

Plaintiff and letters from Plaintiff's attorneys. TM 00168-00169.

49. Specifically, as to medical records, Dr. Gizzi reviewed records from Dr. Saperia, Dr. McNeil, Dr. Vittug, Dr. Hayes, Dr. Chilazi, Spaulding Rehabilitation Hospital, Dr. Cornelissen, physical therapy records from JBL Rehabilitation Associates, Record of Admission from Good Samaritan Medical Center, and Dr. Rizzoli. TM 00168-00169.

50. Dr. Gizzi's records review revealed that Plaintiff had been treating for ulnar neuropathy during 2002-2003, the period of the claim, and between 1998 and 2004, she had been prescribed Neurontin, Percoset and amitriptyline for the ulnar neuropathy by Dr. Stephen McNeil. TM 00169.

51. Dr. Gizzi's records review indicated that pharmacy records from March 4, 2002 through September 16, 2002 indicated she was filling prescriptions for Fioricet, OxyIR, Percoset, Amitriptyline, Indomethacin, Durgesic and cyclobenzaprine. TM 00169.

52. Dr. Gizzi noted that the records from Spaulding Rehabilitation Hospital repeatedly recommended that Plaintiff pursue PT and OT for her headache and as of January 19, 2004, Dr. Loder noted that Plaintiff again had not had a chance to begin physical therapy or occupation therapy. TM 00169.

53. Dr. Gizzi opined that the medical records and history were consistent with the diagnosis of chronic daily headaches. TM 00165.

54. Dr. Gizzi also opined that Plaintiff did not suffer from migraine headaches and concluded that the chronic daily headache may be secondary to the excessive number of analgesics Plaintiff had been taking for years. TM 00165.

8

63290.1

55. Dr. Gizzi further opined that chronic daily headache is rarely, if ever, disabling. TM 00165.

56. Dr. Gizzi concluded that from the records review, Plaintiff did not have neurological impairments from May 20, 2002 through November 18, 2002 forward. TM 00165.

57. Dr. Gizzi also concluded that there are no restrictions that need to be placed on Plaintiff's employment and that the record did not support any significant or sustained side effects from medications. TM 00165.

58. Dr. Gizzi concluded that the surveillance tapes did not support the claim that Plaintiff was disabled by pain or medication side effects. TM 00165.

59. On January 30, 2006, Prudential completed its review of McCoy's third request for reconsideration of Prudential's decision to disallow McCoy's claim for STD and LTD benefits. TM 00592-00595.

60. Prudential upheld its prior decisions to deny McCoy's claim for benefits. TM 00592.

61. Prudential's decision was based on its review of the medical information in the file, along with the external medical file review of all medical documentation by Dr. Gizzi, a review of the ADL completed by McCoy, the surveillance of McCoy's activities, and the policy terms and conditions. TM 00593-00594.

62. Prudential noted in its decision letter that Dr. Vittug opined McCoy's headaches did not have migraine characteristics and were tension headaches. TM 00594.

63. Prudential noted that Dr. Rizzoli indicates McCoy's diagnosis was secondary headaches versus migraine. TM 00594.

64. Prudential noted that Dr. Gizzi's review indicated that McCoy's symptoms did not have the characteristics of migraine and that chronic daily headaches were rarely, if ever, disabling. TM 00594.

65. Prudential determined that the medical documentation did not support an impairment related to reports of medication side effects. TM 00594.

66. Prudential noted that the ADL indicated McCoy was able to cook, clean, handle household finances and take care of her children. TM 00594.

67. Prudential concluded that while McCoy may experience symptoms and continue with treatment for her condition, the medical evidence did not support a sickness or injury that would continuously preclude her from performing the material and substantial duties of her regular occupation. TM 00594.

68. Prudential concluded that the medical records did not support a neurological impairment or any significant or sustained side effects from mediation. TM 00594.

69. Also, Prudential determined that McCoy did not satisfy the elimination period for LTD benefits which would have begun on November 18, 2002 and run for 26 weeks. TM 00595.

70. Since McCoy's claim was disallowed prior to satisfying the LTD elimination period, McCoy was not entitled to LTD benefits. TM 00595.

## CONCLUSION

Based on the following undisputed material facts, Prudential requests that the Court issue an order granting Prudential's Motion for Summary Judgment.

Respectfully Submitted,

63290.1

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA
By Their Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

**Certificate of Service**

I, Carey Bertrand, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the NEF on August 17, 2006.

/s/ Carey Bertrand

63290.1