UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 05-11283-NG

| | |
|---|---|
| TERESA A. MCCOY | ) |
|     Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| PRUDENTIAL INSURANCE COMPANY | ) |
| OF AMERICA | ) |
|     Defendant | ) |

**PLAINTIFF TERESA A. MCCOY'S
RULE 56.1 STATEMENT OF FACTS**

NOW COMES the plaintiff Teresa A. McCoy and submits the following statement of

facts in accordance with local rule 56.1 statement as follows:

**A. Mrs. McCoy's Tenure With State Street.**

1.    Mrs. McCoy had an effective date of employment with State Street of May 26, 1989. TM

542.

2.    In the Spring of 2002, she worked as senior reconcilement clerk. TM 540.

3.    She earned $31,416.00 per annum. TM 570.

4.    The position required using a computer on a cumulative basis for about 2 hours each

day, sitting for 6 hours, walking for one half an hour, lifting up to fifteen (15) pounds.

TM 549.

5.    As part of her benefits package with State Street, Prudential provided her with coverage

"own occupation" disability insurance coverage for twenty four (24) months for seventy

percent (70%) of her annual salary. TM 570.

**B. The "Own Occupation" Disability Coverage.**

6.      You are disabled when  Prudential determines that:
You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
You have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or injury. TM 13.

The insurance policy defines **Material and substantial duties** as:

-are normally required for the performance of your regular occupation; and
-cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week. Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week. TM 13.

7.      "We may require you to be examined by doctors...of our choice." TM 13.

**C. Mrs McCoy's Disabling Condition**s.

8.      Prudential's consulting physician, Dr. Martin Gizzi, M.D., stated,"Ms. McCoy's history and records are consistent with the diagnosis of chronic daily headache." TM 100.  I

9.      In addition to chronic headaches, Mrs. McCoy also suffered from  a painful ulnar nerve that required surgery  in November 2003 and June 2004. TM 311; 326-328.

**1. Mrs. McCoy Develops Debilitating Headaches.**

10.      On March 7, 2002, Dr. Antonio J. Vittug, M.D., a neurologist, examined Mrs. McCoy, and prescribed additional medications and scheduled follow up treatment. She had been referred to Dr. Vittug because of her persistent debilitating headaches. TM 435

11.      . On March 26, 2002, Mrs. McCoy again consulted with Dr. Vittug and reported that her new medications did not provide relief. TM 436.

12.      She again was examined by Dr. Vittug on April 10, 2002 and reported that her headache intensity had decreased but that she suffered drowsiness. TM 437.

2

13.    On May 20, 2002, Dr. Vittug examined Mrs. McCoy. He noted that although she was alert, she "appeared tired." TM 439.

14.    She reported that she again suffered from a tension headache. Dr. Vittug opined that she should take time off from work. TM 439. He prescribed amitriptyline, almotriptan and oxy-IR. TM 439.

15.    Three days later, Dr. Vittug, again examined Mrs. McCoy after she reported that her headaches had continued daily. TM 440.

16.    He prescribed additional medications. TM 440.

17.    On June 3, 2002, Dr. Vittug again examined Mrs. McCoy, noted that her condition was not as bad as before. TM 441.

18.    On June 17, 2002, Dr. Vittug examined Mrs. McCoy, and although he concluded that her condition improved some, he noted, "At this time, she is not ready to return to work." TM 442.

19.    On July 8, 2002, Dr. Vittug examined Mrs. McCoy and concluded that her situation had not improved.

20.    He referred her to Dr. Michael Hayes, M.D., for botox treatment. TM 443.

21.    On July 17, 2002, she underwent botox treatment. TM 444.

22.    On July 18, 2002, and July 22, 2002 Dr. Vittug examined Mrs. McCoy and noted that her condition was the same. TM 445.

23.    On July 31, 2002, Dr. Vittug, M.D., wrote a narrative report and stated that Mrs. McCoy could be expected to be out of work until September 2002. TM 433.

24.    On November 18, 2002, Mrs. McCoy was examined by another neurologist, Dr. Paul

3

Rizzoli, M.D. TM 448-449.

25.  On December 19, 2002, Dr. Rizzoli completed a Headaches Residual Functional Capacity Questionnaire and opined that Mrs. McCoy suffered from constant generalized headaches that impacted her ability to sleep and to work on a regular basis. TM 483-488.

26.  In terms of occupational impairment, Dr. Rizzoli opined that he expected that Mrs. McCoy would be unable to engage in basic work activities while suffering from headaches and that she would need to take unscheduled breaks from work during an eight (8) hour work day. TM 486.

27.  After failing to obtain relief, on July 27, 2003, Mrs. McCoy began treating with the headache pain management program at the Spaulding Rehabilitation Hospital. TM 74-90; 190-201.

28.  On August 4, 2003, Mrs. McCoy began treating with the Director of the Pain Rehabilitation Program and Director of Headache Management Program at the Spaulding Rehabilitation Hospital,  a headache specialist, Dr. Elizabeth Loder, M.D. TM 89-90; 101-102; 150-152.

29.  Dr. Loder prescribed a new treatment regime, noting in her records that Mrs. McCoy might have been suffering from headaches from past trauma and that she had very poor vision in her left eye. TM 151.

30.  On October 27, 2003, Dr. Loder's notes reflected that the intensity of Mrs. McCoy's headaches had decreased, but the frequency had not. TM 154.

31.  On January 19, 2004, Dr. Loder's notes stated in her RECOMMENDATIONS as follows:

At this point with the failure of aggressive outpatient therapy to improve patient's situation, the development of possible medication overuse headache and her need for intensive multi disciplinary treatment, I would recommend an inpatient pain rehabilitation program....As we left things, we will seek approval for inpatient therapy. Otherwise, I have further suggestions for this patient's management and would return her to outpatient care to her referring physicians. TM 157.

### 2. Mrs. McCoy Suffers From A Painful And Damaged Left Ulnar Nerve[1].

32.    In November 2003, Mrs. McCoy also had to be treated for, and underwent surgery to repair a damaged ulnar nerve in her left elbow. TM 311.

33.    Dr. McNamee, M.D.'s note of December 1, 2003 states

Teresa continues to have pain in her left arm, but the pain is different than it was before the surgery. She say the pain is now in her left hand. There is a burning pain that is constant, and it is really driving her crazy. TM 311        .

34.    Mrs. McCoy continued to suffer a great deal of pain into 2004. This is reflected in her treating physician's notes of January 8, 2004,  "...but unfortunately the pain going down into the little finder and ring finger has not improved at all." TM 312; February 26, 2004, "She does have quite significant discomfort with palpitation..."

35.    On June 2, 2004, Ms. McCoy underwent another procedure to treat the ulnar nerve with Dr. Simon Cornelissen, M.D. TM 326-328.

36.    Post operative, her physician's notes reflected continuing pain, "She states she has continued pain." TM 315.

37.    An office note of October 23, 2004 states, "She continues to get a feeling of abnormal sensation in the ulnar border of her hand." TM 316.

---

[1]The ulnar nerve travels the length of the arm providing flexion to the wrist and hand.

### D.  Mrs. McCoy Seeks Disability Benefits From Prudential.

38.     In late May 2002 Mrs. McCoy sought Short Term Disability benefits ("STD benefits")

from Prudential.  TM 540; 542.

39.      She advised Prudential that she had become disabled on May 20, 2002 due to

unremitting headaches. TM 540.

40.     Mrs. McCoy executed and delivered a blank medical release so Prudential could review

her medical records and contact her health care providers. TM 538.

41.     She also supported her claim with an Attending Physician's Statement from her

neurologist, Dr. Antonio J. Vittug, M.D., who opined that she was unable to work due to

"severe headaches/fatigue. TM 540. Dr. Vittug, M.D., stated, "Teresa is presently have

debilitating headaches rendering her incapacitated." TM 540.

42.     Despite having zero evidence contradicting Dr. Vittug, M.D.'s conclusion, Prudential

elected to deny Mrs. McCoy's claim. TM 545; 615-618.

### 1. Prudential's Lack Of Analysis And Summary Denial On June 18, 2002.

43.     Prudential denied Mrs. McCoy's claim for benefits on June 17, 2002. TM 615-618.

44.      Without having Mrs. McCoy examined by a medical doctor, or having her records

reviewed by a medical doctor, or requesting additional medical information or opinions

from her neurologist or other medical caretakers, a Prudential nurse concluded, "Medical

documentation supplied supports impairment for 3 days only." TM 544.

> EE is OOW with headache and malaise....Clinical recommends a duration of 1-3 days which does not exceed the 4 day elimination period. Medical does not support beyon [sp] the 4 day waiting period. Recommend disallow/refer to dc. TM 545.

45.     On June 18, 2002, Prudential sent to Mrs. McCoy a form letter denying her claim for

benefits which stated in part, "The information in your file indicates that your disability

began on May 20, 2002 due to XXX and XXX secondary to XXXX.")[2].  TM 616, ¶ 6.

Prudential continued

> The elimination period would be from May 20, 2002 to May 23, 2002. We are denying your claim based on the definition of Total Disability as seen in (1)(a) during the Elimination Period. You may have remained out of work longer than four days, however, the medical documentation submitted with your claim does not support a condition/impairment that would extend beyond the four day Elimination Period. TM 616.

### 2. Prudential Equated Driving A Car With Proof That Mrs. McCoy Was Not Disabled.

46.     On September 26, 2002, Mrs. McCoy submitted to Prudential a detailed Activities of

Daily Living form. TM 496-503.

47.     She reported that she suffered from constant headaches. TM 496. The form focused on

household type activities rather than anything relating to Mrs. McCoy's occupation at

State Street. She stated she could drive a car and provide some level of care to her

household and children. TM 496-503.

48.     Prudential concluded because Mrs. McCoy could drive a car and could provide some

level of care for her children, that equated with being able to work on a consistent basis

---

[2]A signed and more complete copy of that letter appears at TM 295.

five (5) days a week, forty (40) hours a week. TM 547.

49.    Prudential again made this conclusion on October 3, 2002. TM 549.

50.    This continued as more and more medical records were submitted to Prudential. TM 549;

554-555.


**TERESA A. MCCOY**
By Her Attorneys,
*/s/ Jonathan M. Feigenbaum*

_____
          Jonathan M. Feigenbaum, Esq.
B.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel No. (617) 367-8787

## <u>CERTIFICATE OF SERVICE</u>

          I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. (NEF), and paper copies will be sent to those indicated as non-registered participants on this 18th day of August 2006.

*/s/ Jonathan M. Feigenbaum*
L:\LITG\Tmcc001\SJ Materials\sj.rule.56.1.wpd