UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA MCCOY,<br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>Defendant | C.A. NO. 05-11283NG |

**DEFENDANT'S, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SEEKING AN AWARD OF LONG TERM DISABILITY BENEFITS, INTREST AND ATTORNEYS' FEES AND COSTS AGAINST PRUDENTIAL INSURANCE COMPANY OF AMERICA**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, The Prudential Insurance Company of America (hereinafter referred to as "Prudential") submits this Opposition to Plaintiff's Motion for Summary Judgment Seeking an Award of Long Term Disability Benefits, Interest and Attorney's Fess and Costs Against Prudential Insurance Company of America. In support of this Opposition, Prudential refers this Court to its Memorandum of Law in Support of Its Motion for Summary Judgment filed previously and incorporated herein and states as follows:

## INTRODUCTION

Despite Plaintiff's arguments in her Motion for Summary Judgment, this Court should uphold Prudential's final decision for three reasons. First, this Court has already ruled that the applicable standard of review is arbitrary and capricious and Prudential's decision should be upheld as it was not arbitrary and capricious. Second, under the arbitrary and capricious standard, Prudential's decision to deny benefits should be upheld because there is substantial medical evidence contained in the record which supports Prudential's decision. Third,

63922.3

1

Prudential's final decision, which is the decision this Court should consider, was reasoned and support by substantial evidence.

   **A.  This Court Has Already Issued a Ruling on the Standard of Review**

Plaintiff's argument that this Court should reconsider its ruling on the standard of review is inappropriate and untimely.  The parties agreed, as did the Court, that the issue of the standard of review would be briefed prior to the briefing of summary judgment motions.  After the briefing on the issue of the standard of review, this Court issued a ruling on July 31, 2006, determining that the applicable standard of review is arbitrary and capricious.  Plaintiff should not be able to seek reconsideration of arguments already advanced and rejected in the guise of a Summary Judgment Motion. To the extent Plaintiff makes new arguments for *de novo* review, this Court should reject them as untimely.  Notwithstanding this fact, Prudential is compelled to respond to these new arguments.  Prudential refers this Court to its Opposition to Plaintiff's Motion that the Denial of Benefits Claim by Prudential Insurance Company of American is Subject to the "*De Novo*" Standard of Review and incorporates its Opposition by reference.

Plaintiff again argues that the *de novo* standard of review should apply because Prudential took 138 days to make a decision at the final level of appeal.  Again, Plaintiff neglects to mention that Plaintiff did not appeal the denial for more than two (2) years after the last decision.  Prudential made its second appeal decision, upholding its original decisions, on April 30, 2003. Plaintiff submitted her final appeal, which the assistance of counsel, of Prudential's decision on September 13, 2005.  Plaintiff has argued that Prudential's delay should be considered a "deemed denial" of McCoy's claim and thus *de novo* review should apply.  A District Court in this Circuit has found previously that a delinquent decision did not subject the decision to *de novo* review since it substantially complied with the regulatory guideline.

2

63922.3

Papadopolous v. Hartford Life Ins. Co., 379 F. Supp. 2d 117, 124 (D. Mass. 2005)(taking 145 days to decide the appeal instead of 120 days was deemed substantial compliance with the regulations.) The Papadopolous Court noted substantial compliance is sufficient. Papadopolous, supra *citing* Terry, supra at 39. Like Papadopolous, Prudential substantially complied with the regulations pursuant to the law of this Circuit. Moreover, the delay was due to the length of time between the Prudential's decision on the second appeal and the Plaintiff submitting her final appeal. Thus, this claim should not be reviewed *de novo* as Prudential's decision substantially complied and the delay was due to Prudential obtaining an outside medical record review in response to the new information provided by McCoy as part of her third appeal.[1]

Under the Regulations, Plaintiff had one hundred eighty (180) days to appeal Prudential's decision, yet despite this, Prudential agreed to accept Plaintiff's belated appeal. Certainly, Plaintiff, who wanted over two years to file her final appeal, was not prejudiced by Prudential taking additional time to issue its decision.

Plaintiff argues, for the first time, that *de novo* review should be applicable here due to an alleged conflict of interest. The sole basis for the alleged conflict is the undisputed fact that Prudential both underwrites the Plan's long-term disability benefits and serves as the claims administrator of claims submitted by plan participants for long term disability benefits. This arrangement alone does not result in a conflict. In the First Circuit an alleged conflict of interest must not be "chimerical, imagined, or conjectural." Leahy v. Raytheon Co., 315 F. 3d 11, 16 (1st Cir. 2002). Moreover, the First Circuit has specifically ruled that the mere dual role of an insurance company as both insurer of the Plan and administrator is not in and of itself a conflict

---

[1] Ironically, on one hand, Plaintiff argues that Prudential's decision should not be upheld because Prudential relied on clinical reviews in the first and second appeal decisions. On the other hand, Plaintiff states that the claim should be deemed denied despite the fact that Prudential needed additional time because it was waiting for the results of the independent records review. Essentially, no matter what Prudential did (or didn't do) Plaintiff would find fault with the decision.

63922.3

3

of interest permitting *de novo* review.  <u>Pari-Fasano v. ITT Hartford Life and Accident Ins. Co.</u>, 230 F.3d 415 (1st Cir. 2000).  A conflict will not be presumed in this circumstance and the claimant has the burden of proving an actual conflict.  <u>Id.</u>  Here, Plaintiff offers no facts to support her conclusion that a conflict exists.  Plaintiff's reliance on the <u>Janeiro</u> case to support her argument is misplaced.  The <u>Janeiro</u> facts are significantly different than the case at bar.  In <u>Janeiro</u>, there was a demonstrable conflict between the individual Trustee of the Plan and the Plaintiff participant.  Thus, this Court should review this matter using an arbitrary and capricious standard pursuant to its ruling of July 31, 2006.

**B. Medical Evidence Contained in the Record Supports Prudential's Decision**

Prudential's decision that the medical evidence (of chronic headaches, NOT migraines) did not support a sickness or injury that would continuously preclude McCoy from performing the material and substantial duties of her regular occupation, that the medical records did not support a neurological impairment or any significant or sustained side effects from medication and that McCoy did not satisfy the elimination period for LTD benefits which would have begun on November 18, 2002 should be upheld as it was supported by substantial evidence.  TM 00594-00595.

Plaintiff claims to have been disabled from November 19, 2002 through November 18, 2004, yet her visit with Dr. Rizzoli on November 18, 200, cited by Plaintiff in her brief on page 6, does not support her claim of disability at that time.  TM 00448-449.  Dr. Rizzoli did not opine that McCoy was totally disabled, nor did he place any physical restrictions or limitations on her. TM 00448-449.  During his assessment of the Plaintiff just one day before the date Plaintiff contends her entitlement to disability benefits commenced, Dr. Rizzoli noted no impairments, cognitive impairments or any inability to perform the duties of her occupation.  TM 00448-449.

4

63922.3

A month later, Dr. Rizzoli merely opined that Plaintiff would need to take a break from her job when experiencing headaches. TM 00486. Dr. Rizzoli <u>has never opined that Plaintiff could not work</u> nor has he ever opined that she was totally disabled. TM 00486. Ironically, Plaintiff's brief then mentions her treatment with Dr. Loder as the next medical documentation to support her claim. McCoy did not start treating with Dr. Loder until the end of July, 2003. TM 0074,-90, TM 00190-00201. Just as with Dr. Rizzoli, Dr. Loder did not opine that McCoy was disabled nor did she place any restrictions or limitations on McCoy. TM 0074,-90, TM 00190-00201. Neither Dr. Rizzoli nor Dr. Loder have opined that McCoy was totally disabled, unable to work or placed any physical limitations or restrictions on her during the period for which she is seeking benefits. Further, despite the claimed severity of her headaches, Plaintiff sought no further treatment between December of 2002 and July of 2003. Finally, just because Dr. Vittug, concluded (or believed) that Plaintiff was totally disabled prior to the period of disability claimed in Plaintiff's brief that does not render Prudential's claim decision arbitrary and capricious. *See* <u>Guarino v. Metropolitan Life Ins. Co.,</u> 915 F. Supp. 435, 445 (D. Mass. 1995)(granting summary judgment to the defendant in a long term disability action involving an ERISA-regulated benefit plan.); *see also* <u>Jestings v. New England Tel. And Tel. Co.,</u> 757 F.2d 8, 9 (1st Cir. 1995)(reiterating that it is for the trustee of the plan, and not judges, to choose between reasonable alternatives).

     Further, it should be noted that while Dr. Vittug concluded that as of November 19, 2002 McCoy could not work, he provided no reasoning based on subjective or objective findings to support his conclusion. Moreover, despite this conclusion, he did not specify any physical restrictions or limitations nor did he state what functional limitations precluded McCoy from performing her occupation. Inasmuch as Prudential's decision was not lacking a "rational basis,"

5

63922.3

the Court cannot disregard it.

Plaintiff argues that Prudential inappropriately gave the same weight to a nurse's clinical review of the record as it did to McCoy's treating physicians. This argument misstates Prudential's position. As noted above, two of McCoy's physicians, who were treating her at the times of her claimed disability never stated that she was disabled. It is well established that McCoy bears the burden of proving that she was disabled. The record before Prudential contains substantial evidence to support its conclusion that she was not disabled.

As the case law in this circuit is well settled, there is no question that where conflicting medical evidence exists deference is given to the administrator's decision. Leahy, supra at 19 ("when the medical evidence is sharply conflicted, the deference due to the plan administrator's determination may be especially great"). Moreover, even if the plan administrator chooses to resolve the conflicting medical evidence against the treating physicians, it is of no consequence. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("courts have no warrant to require administrators automatically to accord special weight to the opinions of the claimant's physician.") Here, there was a conflict amongst McCoy's own physicians. Dr. Vittug concluded McCoy was unable to work, however, neither Dr. Rizzoli nor Dr. Loder made the same conclusion.

Prudential reviewed the entirety of Plaintiff's medical records provided in making its decision and simply because it came to a conclusion different from the one made by Dr. Vittug, does not make said conclusion arbitrary. Based on a review of the medical evidence, Prudential does not dispute that Plaintiff suffered from headaches which have caused Plaintiff pain and discomfort. However, there is substantial medical evidence, notably from Plaintiff's own treating physicians, that Plaintiff had sedentary work capacity during the period at issue. There is

6

63922.3

also substantial evidence in the record to support Prudential's conclusion that McCoy failed to satisfy the elimination period in the Plan. The medical information from Dr. Vittug supports Prudential's decision that McCoy did not satisfy the elimination period. This medical information clearly shows improvement during the elimination period and showed a worsening of the condition only when McCoy had to return to work after being out on maternity leave. The medical information from November 18, 2002 onwards, further supports Prudential's decision that the medical documentation did not support a sickness or injury that would continuously preclude McCoy from performing the material and substantial duties of her regular occupation.

    In March of 2002, Plaintiff first visited Dr. Vittug due to the headaches. It was noted that there were no characteristics of migraine headaches. TM 00435. On March 26, 2002, Dr. Vittug noted the headaches were tension headaches and that Plaintiff's second child had recently been born on March 12, 2002. TM 00436. Shortly thereafter, on April 10, 2002, Dr. Vittug noted that the headaches had decreased in intensity, and Plaintiff had no visual symptoms. TM 00437. On April 24, 2004, Dr. Vittug noted the headaches were much milder and that she was able to function during the day without having to take medication. TM 00438. Also, Dr. Vittug noted significant improvement with the tension type headaches. TM 00438. Plaintiff went back to work shortly thereafter and Dr. Vittug noted that the stress of having to get up early to drive to work may have exacerbated the tension-type headache. TM 00439. Plaintiff had a normal MRI on May 23, 2002, though Dr. Vittug concluded the headaches were severe. TM 00440. After discontinuing work, Plaintiff's headaches improved as noted in Dr. Vittug's note of June 3, 2002. Further improvement was noted by Dr. Vittug on June 17, 2002 as there was decreased intensity due to not having to get up early to go to work and not having to face the stress of that. TM 00442. On July 8, 2002, the headaches were noted to be of mild to moderate intensity. TM

00443. Plaintiff received an injection to treat her headaches on July 17, 2002 and despite the injection her headache intensified in the evening though she was still able to sleep. TM 00445.

As argued above, in November of 2002, Plaintiff was seen as Faulkner Hospital, by Dr. Rizzoli, the Chief of Neurology. Dr. Rizzoli noted there were no associated symptoms with the headache. TM 00412. Dr. Rizzoli noted her current level of activity was driving and caring for her two children and that her appetite, weight and sleep were intact. TM 00412-00413. The impression was secondary headaches versus migraine. TM 00412. It was recommended that Plaintiff stop smoking and using alcohol altogether. TM 00413. No restrictions were placed on Plaintiff at that time. TM 00412-00413. Dr. Rizzoli filled out a "Headaches Residual Functional Capacity Questionnaire on December 12, 2002. TM 00415-00420. This document indicated that there were no positive test results or objective signs of headaches, which were listed as weight loss, tenderness, impaired sleep, impaired appetite or gastritis, X-ray, MRI, CT Scan or EEG. TM 00417. Dr. Rizzoli stated that emotional factors somewhat contributed to the severity of McCoy's headaches. TM 00417. While Dr. Rizzoli stated that Plaintiff would be precluded from performing basic work activities during a headache and would need a break, he did not list any limitations for her. TM 00417-00418. Dr. Rizzoli stated she would need to take unscheduled breaks during an 8 hour work day but did not explain, despite being asked additional questions in this regard, how often she would need breaks, how long the breaks would need to be and if McCoy would have to lie down or sit quietly. TM 00418-00419. Dr. Rizzoli did not opine that McCoy was disabled.

Plaintiff had an MRI with contrast performed of her head and the results were normal. TM 00150. A physical examination indicated no head abnormalities on August 4, 2003. TM 00151. Dr. Loder noted that the possibility of cerebral venous thrombosis appears to have been

considered and ruled out. TM 00151. Dr. Loder noted she was smoking a pack of cigarettes a day, drinking 2 beers per night and drinking 2-4 beers per weekend.[2] TM 00151. She was able to sleep 6-7 hours per night. TM 00151. The headaches did not appear to have significant migrainous characteristics. TM 00151. Given the substantial evidence contained in the record, Prudential made a reasonable decision which should be upheld by this Court.

**C. Final Appeal Decision Is The Decision For Judicial Review**

The subject of this judicial review must be on the final decision made by Prudential in denying McCoy's claim for long term disability benefits. <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 516 (D. Mass. 2005). Reviewing each intermediate decision frustrates the purpose of the administrative appeals process and ERISA's exhaustion requirement.

It should be noted that the final decision was included in the record produced to Plaintiff at the outset of this litigation. As part of the parties' joint statement, it was agreed that the Plaintiff would notify the Defendant by June 23, 2006 if there was an issue as to the contents of the record and that any motions regarding the contents of the record would be filed on or about July 7, 2006. Plaintiff let both of these deadlines pass and took no action to attempt to exclude the final decision from the record.

Plaintiff also takes issue with the process of the review of the final appeal by Prudential. Perhaps Plaintiff has focused on the alleged flaws in the appeals process because Plaintiff cannot point to persuasive medical records to refute Prudential's conclusion that she was not disabled within the meaning of the policy.[3] Plaintiff objects to a medical records review done more than

---

[2] Plaintiff continued to smoke and drink despite the fact that it was recommended to her in November of 2002 at Faulkner Hospital that she cease those habits to see if she gained any relief. TM 00412. One would assume that if the pain was as debilitating as claimed, one would follow her physician's recommendation to quit habits were are clearly detrimental to one's health in order to seek relief from the headaches.

[3] Plaintiff's final appeal, dated September 13, 2005, stated McCoy was unable to perform the duties of her regular occupation due to symptoms related to migraines and non-specific headaches. TM 00257-00269. There was no

9

63922.3

three years after the denial of the claim at the second level of appeal but neglects to mention that Plaintiff filed her denial well after the 180 days afforded to her for appeal. In fact, Plaintiff filed an appeal more than two years after the denial. Surely, a physical examination more than two years after the initial denial and during a time when the Plaintiff no longer contends she is disabled would not be sufficient based on Plaintiff's own argument. Thus, Prudential had no choice but to have an independent physician review McCoy's medical records. Finally, Plaintiff takes issue with the internal, clinical review done by Prudential in the underlying decisions. Essentially, Plaintiff wants it both ways: first, she insisted that Prudential accept her final appeal more than 2 years after its denial; but then she seeks to hold Prudential to rigid time standards in making its final decision. Plaintiff ignores the fact the staleness of the claim itself led to a more lengthy review process.

Additionally, Plaintiff advances a similar argument concerning Prudential's decision on the final appeal. Plaintiff faults Prudential for doing an internal clinical review in the intermediary decisions and faults them for having a records review done on the final appeal where the claim had been held in abeyance for over two years. Surely, the Plaintiff cannot argue that Prudential should have done an independent medical examination in December of 2005 in order to determine whether she was disabled from November of 2002 through 2004.[4] Plaintiff makes a "lose-lose" type of argument against Prudential; meaning if Prudential had not retained an

---

mention of the ulnar nerve condition, and no was a claim for benefits made based on this condition at any time. Plaintiff filled out an "Activities of Daily Living" Questionnaire on September 26, 2002 which inquired as to her current medical condition and Plaintiff made no mention of any other conditions, nor did she mention the various medications she was taking for the ulnar nerve condition. TM 00496-00503. Plaintiff mentions this condition in order to persuade this Court to award benefits, however, Plaintiff did not make a claim based on this condition and her last appeal, which was made with the assistance of her counsel, makes no mention of this condition. Thus, this Court should not consider her ulnar nerve condition when determining whether Prudential's decision was reasoned and supported by substantial evidence.

[4] It was not until the Plaintiff filed her Motion for Summary Judgment that Prudential was informed of the limited duration of Plaintiff's claim for benefits. Prudential was aware that Plaintiff believed her claim to be for a closed period, however, at no time did Plaintiff reveal the timeframe of her disability until the filing of the instant Motions.

10

63922.3

outside physician to review the medical records, Plaintiff would have argued that Prudential's failure to obtain a outside medical records was arbitrary and capricious; which is exactly what Plaintiff argued as to the intermediary decisions. The final decision of Prudential is the decision which this Court should review and not the intermediate decisions.

## CONCLUSION

Based on the foregoing and Prudential's Memorandum of Law in Support of Its Motion for Summary Judgment, Prudential respectfully request that the Court issue an order granting its Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment.

Respectfully Submitted,
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA
By Their Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

155 Federal Street
Boston, MA 02110
(617) 422-5300

### Certificate of Service

I, Carey Bertrand, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the NEF on September 1, 2006.

/s/ Carey Bertrand

11

63922.3