**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TERESA A. MCCOY, | ) |
|   Plaintiff, | ) |
| | ) |
|   v. | ) Civ. Action No. 05cv11283-NG |
| | ) |
| PRUDENTIAL INSURANCE COMPANY | ) |
| OF AMERICA AND STATE STREET | ) |
| CORPORATION, | ) |
|   Defendants. | ) |

GERTNER, D.J.:

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT**
June 12, 2007

I.  **INTRODUCTION**

This case involves an appeal from the denial of an
application for long-term disability benefits under an Employee
Retirement Income Security Act ("ERISA") insurance policy.
Plaintiff Teresa McCoy ("McCoy") applied for benefits on June 14,
2002, complaining of debilitating headaches and fatigue.  Her
application was denied by defendant Prudential Insurance Co. of
America ("Prudential"), and the denial was upheld by three
separate administrative reviews.  McCoy has brought suit under
ERISA (29 U.S.C. § 1132(a)(1)(B)), a breach of contract theory,
and a failure to timely provide plan documents claim (29 U.S.C. §
1024(b)(4)).  Cross-motions for summary judgment have been filed
as to the ERISA claim only.

As previously decided by this Court, Prudential's denial of
McCoy's application for disability benefits should be reviewed

under the deferential "arbitrary and capricious" standard. McCoy's renewed arguments that Prudential should be held to a more stringent standard of review are untimely, unpersuasive, and fail as a matter of law.

Prudential based its denial of McCoy's application for disability benefits on a large body of substantial evidence, including extensive medical documentation, an Activities of Daily Life ("ADL") questionnaire, video surveillance, and an independent medical review by a board-certified neurologist. Prudential properly weighed all the available evidence when deciding to deny McCoy's application, and substantially complied with regulatory guidelines.  The available medical evidence was clearly substantial enough to reasonably support Prudential's denial of McCoy's application for benefits.  The independent review performed by Dr. Gizzi was properly conducted, considered all the available evidence, and reasonably supported Prudential's decision.

For the reasons set forth below, plaintiff's Motion for Summary Judgment **[document # 32]** is **DENIED** and defendant's Motion for Summary Judgment **[document # 29]** is **GRANTED**.

Although the parties have not addressed the issue in their motions for summary judgment, McCoy's breach of contract claim is preempted by ERISA and is hereby **DISMISSED**.

## II. <u>FACTS</u>

McCoy was employed by State Street Bank and Trust Co.
("State Street") as a Senior Reconcilement Clerk with an annual
salary of $31,416. (Transcript Material ("TM") 00540, 00570.)
McCoy's daily occupational duties included spending approximately
two hours on the computer, six hours sitting, thirty minutes
walking, lifting no more than fifteen pounds and no customer
service. (<u>Id.</u> at 00566.)

As part of her employment, McCoy was covered by State
Street's group disability insurance program (the "policy"),
issued by Prudential. (<u>See</u> <u>id.</u> at 00001-41.) The policy grants
Prudential the discretionary authority to "interpret the terms .
. . to make factual findings, and to determine eligibility for
benefits." (<u>Id.</u> at 00036.) The policy considers a person
"disabled" when all of the following conditions are met:

> (1) You are unable to perform the material
> and substantial duties of your regular
> occupation due to your sickness or injury;
> and
>
> (2) You have 20% or more loss in your indexed
> monthly earnings due to that sickness or
> injury.
>
> After 24 months of payments, you are disabled
> when Prudential determines that due to the
> same sickness or injury, you are unable to
> perform the duties of any gainful occupation
> for which you are reasonably fitted by
> education, training or experience.

(<u>Id.</u> at 00013.)

McCoy has a history of headaches and a damaged left ulnar nerve.[1] (Id. at 00098-100.) Dr. Antonio Vittug, McCoy's neurologist, has treated her for recurring headaches since March 2002, shortly after she gave birth to her second child. (Id. at 00435.) In July 2002, McCoy underwent a Botox treatment from Dr. Michael Hays in order to alleviate her recurring headaches. (Id. at 00444.) Beginning in November 2002, she also received treatment from another neurologist, Dr. Paul Rizzoli. (Id. at 00448-49.) In August 2003, McCoy sought treatment from Dr. Elizabeth Loder at the Spaulding Rehabilitation Hospital. (Id. at 150-52.) Despite this extensive treatment, McCoy continued to suffer from recurring headaches. (Id. at 154.) In January 2004, Dr. Loder stated:

> At this point with the failure of aggressive outpatient therapy to improve patient's situation, the development of possible medication overuse headache and her need for intensive multi-disciplinary treatment, I would recommend an inpatient pain rehabilitation program . . . As we left things, we will seek approval for inpatient therapy. Otherwise, I have few further suggestions for this patient's management and would return her outpatient care to her referring physicians.

(TM 00157.) McCoy never sought inpatient treatment for her headaches.

---

[1] The ulnar nerve travels down the arm and controls movement in the wrist and hand.

In October 2003 and June 2004, McCoy underwent surgeries to
repair her damaged left ulnar nerve.  (Id. at 00311, 14.)  Post-
operative notes from both surgeries indicate that McCoy continued
to suffer pain and feel abnormal sensations in her left arm.
(Id. at 00311, 00315-17.)

McCoy applied for long and short-term disability benefits on
June 14, 2002, complaining of debilitating headaches and fatigue.
(Id. at 00544.)  McCoy submitted a copy of her medical records to
Prudential, including a statement from Dr. Vittug, stating
"Teresa is presently having debilitating headaches rendering her
incapacitated."  (Id. at 00540.)  On June 18, after a nurse
reviewed McCoy's medical records, Prudential granted short-term
benefits from May 20 through May 23, 2002, but denied her claim
for long-term benefits, stating "medical documentation supplied
supports impairment for three days only."  (Id. at 00544.)  The
Prudential nurse's report stated:

> [Employee] is [out of work] with headache and
> malaise . . . Clinical recommends a duration
> of 1-3 days which does not exceed the four
> day elimination period.  Medical does not
> support beyon [sic] the four day waiting
> period.  Recommend disallow/refer to dc."

(Id. at 00545).

McCoy appealed the initial decision on August 19, 2002.
(Id. at 610.)  Prudential performed an internal clinical review
of the medical documentation and also considered an ADL
questionnaire submitted by McCoy.  (Id.)  The ADL questionnaire

indicated that McCoy was able to cook, drive, manage household finances, shop and care for her children and perform chores with her husband's assistance.  (Id. at 00496-503.)  Prudential once again determined that the medical documentation indicated that the severity and intensity of McCoy's headaches did not support a determination that she was disabled under the terms of the policy.  (Id. at 00610.)  Prudential also determined that McCoy's level of functional activity at home suggested she could perform the duties of her occupation.  (Id.)  Prudential upheld its initial denial of McCoy's application on October 9, 2002.  (See id. at 00609-11.)

McCoy appealed again on April 3, 2003.  (Id. at 00603-05.)  Prudential performed another internal clinical review, and again concluded that the available medical documentation did not qualify McCoy as disabled under the terms of the policy.  (Id.)  McCoy's medical documentation now included the opinion of Dr. Rizzoli, who diagnosed her with an acute onset of daily headaches, not migraines, and noted no other associated symptoms.  (Id. at 00604.)  Prudential specifically noted that neither Dr. Vittug nor Dr. Rizzoli placed any restrictions on McCoy's activities, or mentioned any medication side-effects that might impair her ability to perform the duties of her occupation.  (Id. at 00604-05.)  Prudential also noted that McCoy's headaches were not migraines and possibly associated with the recent birth of

her second child or the large amount of medication she was prescribed. (Id.) Prudential denied McCoy's second appeal on April 30, 2003. (Id. at 00605.)

McCoy appealed a third time on September 13, 2005, two years after the second appeal. (Id. at 00257-69.) Prudential obtained video surveillance of McCoy as part of its review for the third appeal. (Id. at 00252-56.) On November 3, 2005, McCoy was recorded waiting for the school bus with her children, holding her young child, and driving. (Id.) On November 4, 2005, McCoy was again recorded at the bus stop with her children, then drove to the mall and shopped for thirty minutes. (Id.) On November 12, McCoy was recorded driving her children and husband to Wal-Mart and a grocery store, shopping, and carrying bags to the car. (Id.)

Prudential also obtained an independent clinical review of McCoy's medical records from Dr. Martin Gizzi, a board-certified neurologist with the New Jersey Neuroscience Institute. (Id. at 00596-97.) Dr. Gizzi, after reviewing all the available records, including the medical documentation, ADL questionnaire and surveillance videos, determined that McCoy suffered from chronic daily headaches, not migraines, possibly secondary to the large amount of medication she was prescribed. (Id. at 00165, 00168-69.) Dr. Gizzi stated that chronic daily headaches were not a disabling condition, and concluded that, based on his review,

McCoy was not disabled under the terms of the policy and capable of performing her occupational duties.  Based on the surveillance footage, medical documentation and the independent review by Dr. Gizzi, Prudential denied McCoy's third appeal on January 30, 2006.

## III. ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Once the moving party demonstrates the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant."  Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  The nonmovant must then "affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).  The court must:

> View the entire record in the light most
> hospitable to the party opposing summary
> judgment, indulging all reasonable inferences
> in that party's favor,' but paying no heed to
> 'conclusory allegations, improbable
> inferences, [or] unsupported speculation.'

> If no genuine issue of material fact emerges,
> then the motion for summary judgment may be
> granted.

<u>Id.</u> (citations omitted).

**B.    Appropriate Standard of Review for Prudential's Decision**

The parties have already argued the standard of review and this Court has previously decided that Prudential's denial of McCoy's request for benefits should be reviewed under the deferential "arbitrary and capricious standard." <u>McCoy v. Prudential</u>, No. 05-11283 (D. Mass. July 31, 2006)(Document No. 27; "Memorandum and Order RE: Standard of Review and Applicability of State Law.")  Under this standard of review, the inquiry is whether the administrator's decision is reasonably supported by substantial evidence contained in the record; "substantial evidence" is evidence reasonably sufficient to support a conclusion. <u>See</u> <u>Sullivan v. Raytheon Co.</u>, 262 F.3d 41, 50-51 (1st Cir. 2001), <u>cert.</u> <u>denied</u>, 534 U.S. 1118 (2002); <u>Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.</u>, 230 F.3d 415, 419 (1st Cir. 2000).

Despite this Court's earlier ruling, McCoy reasserts that *de novo* review is the proper standard for the denial of her application for disability benefits because: (1) Prudential violated 29 C.F.R. § 2560.503-1(h) by taking longer than 90 days to reach a decision on the third appeal, (2) Prudential operated under a structural conflict of interest because they are both the

administrator and payor of the policy, and (3) the policy's grant

of discretionary power to Prudential is insufficient under 29

U.S.C. § 1105.  (Pl.'s Mem. Supp. Sum. J. 11).

      **1.   <u>Prudential Substantially Complied with Regulatory
Time Limits</u>**

McCoy's argument that a *de novo* standard of review should

apply to Prudential's denial of her request for benefits because

it exceeded the statutory 90-day time limit while considering her

third appeal is unpersuasive.  The First Circuit has held that a

delinquent decision does not subject itself to *de novo* review if

it substantially complies with the regulatory guidelines.  <u>See</u>

<u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 39 (1st Cir. 1998);

<u>Papadopoulos v. Hartford Life Ins. Co.</u>, 379 F.Supp.2d 117, 124

(D.Mass. 2005)(taking 145 days to consider claim rather than 120

is sufficient compliance).  In <u>Papadopoulos</u>, defendant Hartford's

violation of the statutory time limit was deemed inconsequential

because it was caused by the appropriate diligence required to

properly investigate the claimant's appeal.  <u>Id.</u> at 125.

Although Prudential took 138 days to consider McCoy's third

appeal, well beyond the 90 days of the regulatory guidelines, it

substantially complied with the regulations because the delay was

necessary to exercise appropriate diligence in investigating the

appeal.  Prudential required additional time to locate the

records and obtain an outside medical review because the claim

was more than three years old and had long since become stale.

Given that the delay was necessary for Prudential to properly review McCoy's records, the violation is inconsequential and does not alter the standard of review.

### 2.  No Conflict of Interest

McCoy's argument that a structural conflict of interest exists merely by virtue of Prudential's dual status as administrator and payor fails under existing First Circuit precedent.  See Tsoulas v. Liberty Life Assurance Co. of Boston, 454 F.3d 69, 76 (1st Cir. 2006) ("No automatic conflict of interest arises to elevate the standard of review where, as here, 'a finding of eligibility means that the insurer will have to pay benefits out of its own pocket.'" (quoting Pari-Fasano, 230 F.3d at 418)); Wright v. R.R. Donnelley & Sons Co., 402 F.3d 67, 76 (1st Cir. 2005)("the fact that the plan administrator will have to pay the claimant's claim out of its own assets does not change the arbitrary and capricious standard of review.").  These decisions are premised on the rationale that the "market presents competing incentives to the insurer that substantially minimize the apparent conflict."  Pari-Fasano, 230 F.3d at 418; see also Doe v. Traveler's Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999) ("Travelers can hardly sell policies if it is too severe in administering them."); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) ("An employer would not want to keep an overly tight-fisted insurer.").  The mere fact that

Prudential is both the administrator and payor of the policy does not create an automatic conflict of interest or alter the applicable standard of review.

      **3.**    <u>**Policy's Language is Sufficient to Grant**</u>
              <u>**Discretionary Authority to Prudential**</u>

McCoy's argument that the language of the policy is insufficient under 29 U.S.C. § 1105 to grant discretionary power to Prudential has already been considered and rejected by this Court. <u>McCoy v. Prudential</u>, No. 05-11283 (D. Mass. July 31, 2006)(Document No. 27; "Memorandum and Order RE: Standard of Review and Applicability of State Law").

For the above reasons, Prudential's denial of McCoy's application for benefits will be reviewed under the customary "arbitrary and capricious" standard, and its decision will enjoy the deference it is entitled to under the law.

      **C.**    <u>**Prudential's Decision was Reasonably Supported by**</u>
          <u>**Substantial Evidence**</u>

McCoy alleges that Prudential's denial of her application for disability benefits was unreasonable, arbitrary and capricious because: (1) it improperly weighed the opinions of her physicians, (2) it was based on unreliable and unsubstantial medical documentation, and (3) its reliance on Dr. Gizzi's review was improper. (Pl.'s Mem. Supp. Summ. J. 13, 16, 19.) Prudential counters that their decision was reasonable and

supported by substantial evidence.  (Def.'s Opp. Pl.'s Mem. Supp.
Summ. J. 4.)

### 1.    **Prudential Properly Weighed the Opinions of McCoy's Physicians**

McCoy's argument that Prudential improperly weighed the
opinions of her physicians is unpersuasive because the majority
of her physicians believed that McCoy was not disabled.  While
Dr. Vittug did state McCoy suffered from "debilitating headaches
rendering her incapacitated," he never placed any specific
functional or occupational restrictions on her.  (TM 00540.)
Drs. Rizzoli and Loder never placed any functional or
occupational restrictions on McCoy either, and never stated that
she was disabled.  The available medical documentation was
contradictory; Drs. Rizzoli and Loder disagreed with Dr. Vittug.
But the existence of contradictory evidence on the record does
not automatically render a decision arbitrary or capricious.
Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30
(1st Cir. 2001).  Prudential was confronted with a conflict of
expert medical opinion, and its conclusion, supported by Drs.
Rizzoli and Loder, was eminently reasonable under the
circumstances.

McCoy also argues that the Prudential nurse was unqualified
to review and decide the outcome of her application under 29
C.F.R. § 2560.503-1(h)(3)(iii)(requiring consultation with "a
health care professional who has appropriate training and

experience in the field of medicine involved . . . " in the
appeal). (Pl.'s Mem. Supp. Summ. J. 14-15.) McCoy cites no
controlling authority for the proposition that insurance
administrators must employ specialists to review claim
applications and denials, or that it is inappropriate for nurses
to do so. At most, McCoy cites outside examples of the
proposition that "the level of deference due nurses should
generally be less than that extended to doctors whose professions
concentrate in the relevant field." Gellerman v. Jefferson Pilot
Ins. Co., 376 F.Supp.2d 724, 735 (S.D.Tex. 2005); see also
C.N.S., Inc. v. Conn. Gen. Life Ins. Co., 9 F.Supp.2d 194, 198
(E.D.N.Y. 1998); Pritt v. United Mine Workers of Am., 847 F.Supp.
427, 432 (S.D.W.Va. 1994). Section 2560.503-1(h)(3)(iii),
however, applies only to independent reviewers giving outside
expert opinions, not to internal decision-makers. As such, McCoy
misconstrues the nurse's role. The nurse did not offer an
opinion to be weighed against the others, as would an independent
reviewer. Instead, she weighed the available medical opinions
against each other, concluding, based on substantial evidence,
that McCoy was not disabled.

     The record discloses very little about the reviewing nurse's
education, training, background, and experience. McCoy argues
that this violates 29 C.F.R. § 2560.503-1(h)(3)(iv), which
requires Prudential to disclose the "medical or vocational

experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination." McCoy's argument must again fail because § 2560.503-1(h)(3)(iv) applies only to independent reviewers offering outside expert opinions, not internal decision-makers.  Again, McCoy misstates the nurse's role.  While it is troubling, and perhaps not the best practice that the identity and qualifications of the nurse are not more readily apparent in the record, the qualifications of Dr. Gizzi, the independent expert who reviewed the records for the third appeal, have been disclosed, thereby satisfying Prudential's regulatory requirements.

McCoy also argues that Prudential acted unreasonably because it did not consider her damaged left ulnar nerve when it denied her application for disability benefits.  (Pl.'s Mem. Supp. Summ. J. 3.)  This argument is unpersuasive given that the only symptoms McCoy complained of when she applied for benefits were headaches and fatigue.  (TM 00544.)  Furthermore, McCoy did not seek treatment for her ulnar nerve until November 2003, well over a year from the initial denial of her application for benefits. (Id. at 00311, 00326-28.)

McCoy offers no real support for her arguments that Prudential improperly weighed the available medical evidence, that it violated regulatory guidelines, or that its nurse was unqualified to deny the application for benefits.  The Prudential

nurse did not substitute her judgment for that of McCoy's physicians and her decision was reasonably and substantially supported by the available evidence.

### 2. The Medical Records Reasonably Support Prudential's Decision

Nor am I persuaded by McCoy's argument that the available evidence does not reasonably support Prudential's denial of her application; the record clearly contains substantial evidence which supports Prudential's decision. Prudential based their final denial of McCoy's application on an extensive medical record, including the ADL questionnaire and video surveillance, and an independent review by a Board-Certified neurologist.

The only piece of evidence supporting McCoy's application for disability benefits is Dr. Vittug's opinion that she suffered from "debilitating headaches rendering her incapacitated." (Id. at 00540.) Despite this conclusion, however, he placed no specific functional limitations upon her activities. (See id.) Additionally, Dr. Vittug's notes from March through May 2002, state that the headaches were not migraines. (Id. at 00435-40.) Dr. Rizzoli noted that McCoy suffered from generalized headaches with no associated symptoms, and would need to take unscheduled breaks during work, but never imposed functional or occupational limits and never considered her disabled. (Id. at 00412-13, 00448-49.) Dr. Loder also noted that the headaches were not

migraines, never stated that McCoy was disabled, and never imposed any functional or occupational limitations. (Id. at 00074-90, 00190-201.) Based on this information, Prudential concluded that McCoy was not disabled under the terms of the policy. Given that none of McCoy's physicians imposed functional or occupational limitations of her activities and that two of her three neurologists believed her to be capable of work, Prudential's denial of her application for disability benefits is reasonably supported by the available medical documentation.

The ADL questionnaire indicated that McCoy was able to cook, drive, manage household finances, shop and care for her children and perform chores with her husband's assistance. (TM 00496-503.) Based on these activities, Prudential concluded that she could reasonably perform her occupational duties, which included spending approximately two hours on the computer, six hours sitting, thirty minutes walking, lifting no more than fifteen pounds and no customer service. (Id. at 00566.) McCoy argues that by focusing on household activities, the ADL questionnaire did not accurately assess her ability to perform her occupational duties. The ADL questionnaire was intended to obtain a general idea of her daily activities and functional abilities at home in order to gauge the extent of any potential disability. McCoy's self-reported ability to function at home and in her personal life, considered in light of the surrounding medical

-17-

documentation, helps to reasonably support Prudential's decision that she was capable of performing her occupational duties.

McCoy's argument that Prudential equated "driving a car with proof that [McCoy] was not disabled" (Pl.'s Mem. Supp. Summ. J. 9.) is inaccurate. The surveillance video was not dispositive of Prudential's decision, it was cumulative with the rest of the extensive medical documentation and the ADL questionnaire. The video surveillance revealed nothing not already reported by McCoy or her physicians; it merely buttressed Prudential's conclusion that McCoy was capable of functioning in her daily life and could perform her occupational duties.[2]

For the above reasons, I am persuaded that the body of medical evidence available to Prudential at the time it denied McCoy's application is substantial enough to reasonably support its decision.

### 3. <u>The Independent Review of the Medical Documentation Supports Prudential's Decision</u>

McCoy's final argument is that Dr. Gizzi's independent review of her claim should be ignored because it was obtained more than three years from the initial denial of her application and does not set forth specific reasons for its decision.

---

[2] Additionally, the video was not considered for the initial denial or the first two appeals. It was created and considered only for the last appeal.

McCoy's objection is flatly unreasonable given that she waited that long before requesting the independent review. Prudential was under no obligation to seek an independent review until McCoy requested one.  McCoy cannot reasonably argue that Prudential should have conducted an independent review of their own volition.  Furthermore, McCoy offers no support for the proposition that a medical records review occurring three years after the fact would be any less accurate or correct than one occurring closer in time to the initial denial.  Given that the review involved documents only, it is reasonable to conclude that the length of time between the initial denial and the records review was irrelevant to the reliability or propriety of the review.

Dr. Gizzi's review clearly sets forth the specific grounds of his decision that McCoy was not disabled under the terms of the policy.  (TM 00165.)  Dr. Gizzi based his independent review of on all the available information, including McCoy's medical and pharmacy records, the ADL questionnaire, and the surveillance video.  (Id.)  He specifically noted that all McCoy's physicians agreed that the headaches were not migraines.  (Id.)  McCoy was diagnosed by her physicians as suffering from "chronic daily headaches" or "secondary headache versus migraine" possibly associated with her pregnancy or the large amount of medication she was prescribed.  (Id.)  Dr. Gizzi noted that chronic daily

-19-

headaches are rarely disabling and that McCoy had acknowledged
that her headaches were improving in a November 6, 2002, letter
to Prudential.  (<u>Id.</u>)  The ADL questionnaire and the video
surveillance of McCoy further supported Dr. Gizzi's conclusion
that McCoy was not disabled, and was capable of functioning in
her daily life.  (<u>Id.</u>)  Dr. Gizzi discovered no significant or
sustained medication side-effects that would render McCoy unable
to perform her occupational duties.  (<u>Id.</u>)

Based on the above information, Dr. Gizzi concluded that
McCoy did not have a neurological condition, was not disabled,
and was capable of performing her occupational duties.  (<u>Id.</u>)
Although Dr. Gizzi's opinion differed from Dr. Vittug's, it was
in accord with Drs. Rizzoli and Loder.  Given Dr. Gizzi's
extensive analysis, I am satisfied that the independent medical
review of McCoy's claim reasonably supported Prudential's denial
of her application for disability benefits.

### D.  <u>McCoy's Breach of Contract Claim is Preempted by ERISA</u>

Although the parties have not addressed the issue in their
motions for summary judgment, McCoy's breach of contract claim is
preempted by ERISA and must therefore be dismissed.

Congress intended ERISA's civil enforcement remedies to be
exclusive and to preempt other claims relating to employee
benefits.  <u>See</u> 29 U.S.C. § 1144(a)(ERISA shall "supercede any and

-20-

all State laws insofar as they may now or hereafter relate to any employee benefit plan."); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 50 (1st Cir. 2000).  McCoy's contract claim clearly "relates to" an ERISA plan.  See generally Danca v. Emerson Hospital, 185 F.3d 1 (1st Cir. 1999); Carlo  v. Reed Rolled Thread Dice Co., 49 F.3d 790 (1st Cir. 1995); Wickman v. Northwestern Nat'l. Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990).  ERISA is the exclusive remedy for McCoy's claims. Accordingly, her breach of contract claim is preempted and is hereby **DISMISSED**.

## IV.  CONCLUSION

    Prudential's decision to deny McCoy's application for disability benefits was reasonable and substantially supported by the record, specifically by extensive medical documentation, the ADL questionnaire, video surveillance, and an independent medical review by a board-certified neurologist.  McCoy is unable to demonstrate that Prudential's decision was made while under a conflict of interest, in bad faith, or that it was unreasonable.

    For the reasons set forth above, McCoy's Motion for Summary Judgment **[document # 32]** is **DENIED**, and Prudential's Motion for Summary Judgment **[document # 29]** is **GRANTED.**

**SO ORDERED.**

Date:  June 12, 2007          /s/ Nancy Gertner

                              NANCY GERTNER, U.S.D.C.